**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BIAGIO STRAGAPEDE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. ___________________ |
| | ) | |
| CITY OF EVANSTON, | ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT AT LAW

Now comes the Plaintiff, Biagio Stragapede, an individual, by his attorneys, Robbins, Salomon & Patt, Ltd., and for his Verified Complaint at Law, states as follows:

### JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to the Americans with Disabilities Act ("ADA" and sometimes referred to herein as the "Act") 42 U.S.C.A § 12101, *et seq.* Venue is proper pursuant to the Act and all parties are residents of the Northern District of Illinois.

### PARTIES

2. The Plaintiff, Biagio (Gino) Stragapede, is a citizen of the United States and resides in Cook County, Illinois.

3. The Defendant, the City of Evanston, is a municipal corporation doing business in Evanston, Illinois.

**COMMON FACTS**

4. On and about May 1996, Gino became an employee of the City of Evanston Public Works Department, Water Sewer Division, and remained employed by the Defendant until September 24, 2010.

5. At all relevant times since May 1996, Gino worked as an hourly employee as water service worker under various supervisors and administrators for the City of Evanston. His primary duties included installing and repairing commercial and residential water meters and outside reading devices, involving testing meters and water pressure, finding leaks and replacing water meters and related parts.

6. On September 29, 2009, Gino sustained a brain and other injuries in a non-work-related accident. Gino was hospitalized at various medical institutions in and about the Chicagoland area as a result of his injuries.

7. Gino, through his family advised the City of Evanston that Gino had been hospitalized in an accident unrelated to his employment but intentionally did not specifically disclose the nature of the medical condition to protect Gino's privacy. The family requested that the City of Evanston refrain from further visits.

8. On October 2, 2010, while hospitalized and without the invitation of Gino or his family, Vicky Bihner, Gino's immediate supervisor within the City Water Sewer Division, gained entry into the ICU at Loyola University Hospital and visited Gino without the family's consent.

9. On October 4, 2010, Edwin Simon, Division Chief of Filtration for the City of Evanston, also gained entry to the ICU at Loyola University Hospital and visited Gino without the family's consent.

10. Also on October 4, 2010, Juanita Willmore, a City Water Sewer Division worker, also gained independent entry to the ICU at Loyola University Hospital and visited Gino without Gino's or the family's consent, claiming she was a friend of the family, which she was not. Ms. Willmore was discovered alone in the room inspecting Gino's injuries and reviewing his medical bands.

11. None of the above-referenced City of Evanston employees were affiliated with the City's human resources department or otherwise privy to the protected information maintained by the Human Resources Department of the City of Evanston.

12. On and after October 4, 2010, as a direct result of the injuries Gino sustained, Gino was placed on indefinite leave from his position with the City of Evanston. At no time did Gino and/or his family members advise the City of Evanston of the specific cause of the injuries sustained by Gino.

13. On or about February 2010, Gino contacted the City of Evanston to seek a return to work.

14. The City required that Gino obtain a Fitness for Duty certification from one of their contracted corporate and occupational health services physicians at Omega Corporate & Occupational Services ("Omega") a medical group associated with NorthShore University HealthSystem.

15. On February 19, 2010, Gino timely presented for medical evaluation at Omega. Gino had a follow-up medical evaluation at Omega on February 27, 2010.

16. On March 15, 2010, the Omega physician that had evaluated Gino directed a letter to a human resources specialist with the City of Evanston seeking a further independent neurological evaluation (the "referred exam") of Gino prior to clearing him for work.

17. On March 17, 2010, Gino presented and obtained an independent neurological examination and completed the referred exam from an Omega neurologist.

18. On April 6, 2010, the Omega neurologist wrote a medical certification letter to the City of Evanston declaring that Gino showed no signs of motor or sensory deficits which would impinge upon his ability to perform his job. He had mild residual cognitive deficits involving retrieval memory and executive function. However, the Omega neurologist concluded that Gino could return to work.

19. In that April 6, 2010 letter, the Omega neurologist also recommended a work trial over the next several weeks to ensure he was able to perform the essential functions of his job. During the work trial, the Omega neurologist suggested to the City of Evanston to allow Gino to be monitored by a co-worker/colleague.

20. In a second letter, dated April 7, 2010, the Omega physician directed a letter to a human resources specialist with the City of Evanston clearing Gino to return to work subject to a work trial with the supervisor.

21. Between June 4 and June 7, 2010, the City of Evanston had Gino perform a three day work trial with Gino's immediate supervisor, Vicky Bihner and Vicky's immediate supervisor, Tim Bartus.

22. Gino passed the work trial.

23. On June 7, 2010, a human resources specialist with the City of Evanston directed a letter to Gino informing him that he was reinstated as a water service worker effective June 7, 2010.

24. In that letter, Gino was further advised that he would have to receive training on a new software program that had been implemented during his absence and advised Gino to keep a

pad of paper and pencil to take notes regarding his assignments, and to have a map with him at all times.

25. Gino returned to work on June 7, 2010 with two pencils, paper, map, and a tape recorder, all as needed to allow him to perform his job in accordance with his clearance.

26. On June 7, 2010, Gino received approximately one hour of training on the new software program and no more. Other City employees were granted a longer training program.

27. On July 2, 2010, the City of Evanston placed Gino on administrative leave, with pay.

28. On August 23, 2010, after Gino was placed on administrative leave, in an email the City of Evanston indicated it was "still evaluating Gino's fitness for duty and it had been determined that Gino and the City would benefit from more comprehensive analysis," and that Gino will be asked to see the Omega neurologist again.

29. In a letter to the City of Evanston, dated August 24, 2010, Gino requested that the City articulate the specific basis for the City's request that Gino submit to another neurological exam after the prior exams had proven him cleared for work. The City never responded.

30. Ultimately, on September 24, 2010, Gino received a letter from the Defendant informing him that he was terminated from his position with the City of Evanston. The termination letter stated that the Defendant "consulted" with the Omega neurologist who performed the referred exam and provided him with a list of the behaviors that Gino was exhibiting and requested from that Omega neurologist a recommendation of accommodation that they might be able to apply to address their concerns going forward.

31. The Omega neurologist never examined nor conferred with Gino after completing his April 7, 2010 report.

32. The Omega neurologist did not opine that Gino posed a significant risk to the health or safety of himself, Defendant's other employees or the public.

33. Nevertheless, the City advised Gino that the Omega neurologist proposed as an accommodation that a coworker accompany Gino at all times to assist him in compiling his work assignments.

34. That letter further stated that the Defendant determined that the Omega neurologist's suggested accommodation was not reasonable in the short or long term.

35. At no time did Gino ever request as a reasonable accommodation that he be accompanied at all times by a coworker.

36. At no time did Gino ask the Omega neurologist to suggest any reasonable accommodation on his behalf to the City, let alone that he be accompanied at all times by a coworker.

37. At no time did Gino ever approve or agree to the Omega neurologist's suggested reasonable accommodation that he would be accompanied at all times by a coworker.

38. At no time did the Defendant ever discuss with Gino the Omega neurologist's recommended reasonable accommodation or explore any alternative reasonable accommodation with Gino.

**COUNT I**
**Violation of the Americans with Disabilities Act**

39. Plaintiff adopts herein by reference paragraphs 1 through 38 above as though fully stated herein as paragraph 39 of Plaintiff's Count I.

40. At all times herein there was a federal law commonly known as the ADA. 42 U.S.C.A. § 12101 *et seq*.

41. At all times herein, Title I of the ADA covered public and private employment.

42. At all times herein, Plaintiff was employed by the City of Evanston, an "employer" within the meaning of the ADA.

43. At all times relevant herein Gino, after September 29, 2009, was and is a "qualified person with a disability" within the meaning of the ADA.

44. Defendant was aware of Gino's disability.

45. Gino was able to perform the essential functions of his job with reasonable accommodations.

46. Defendant discriminated against Gino on the basis of his disability by:

a. Wrongfully terminating his employment due to his disability; and

b. failing to engage in an interactive process with Gino to explore an appropriate reasonable accommodation; and

c. failing to consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship.

47. At all times Gino sought reasonable accommodation requiring use of a pen or pencil, notepad, tape recorder and map on the job.

48. The reasonable accommodation was one which did not create a significant risk to the health or safety of Gino, the Defendant's other employees or the public.

49. As a result of the Defendant's unlawful discriminatory actions, Plaintiff has sustained severe and substantial damages and injuries including, but not limited to, lost earnings, reduction in the value of his pension, lost heath and dental insurance benefits and emotional distress.

50. On December 16, 2010, the Plaintiff filed a Charge of Discrimination with the Chicago District Office of the Equal Employment Opportunity Commission (EEOC) a copy of which is attached to this Complaint as Exhibit A.

51. On August 10, 2012, the Plaintiff was issued a Notice of Right to Sue by the EEOC, a copy of which is attached to this Complaint as Exhibit B.

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in his favor and against the Defendant herein as outlined within the ADA including:

A. That the Plaintiff be awarded back pay, front pay and lost wages;

B. That the Plaintiff be awarded compensatory damages for emotional distress;

C. That the Plaintiff be awarded attorneys' fees and costs;

D. That the Plaintiff be compensated for any medical and dental expenses he and his family incurred since his termination;

E. That the Plaintiff be compensated for the reduced value of his pension;

F. That the Plaintiff be awarded punitive damages for the intentional and wrongful acts of the Defendant; and

G. That the Plaintiff be awarded such other relief as this Court may deem just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Tracy E. Stevenson

Tracy E. Stevenson, ARDC No. 6207780
One of the Attorneys for Plaintiff
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle, Suite 3300
Chicago, IL 60601
312-782-9000
email: tstevenson@rsplaw.com

**VERIFICATION BY CERTIFICATION**

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certify that the statements set forth in this Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certify as aforesaid that they verily believe the same to be true.

Dated: 11-5-2012

Biagio Stragapede
BIAGIO STRAGAPEDE