**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BIAGIO STRAGAPEDE, | ) | |
| | ) | |
| | ) | Case No. 12-cv-08879 |
| Plaintiff, | ) | |
| | ) | Hon. Edmond E. Chang |
| vs. | ) | |
| | ) | |
| CITY OF EVANSTON, | ) | **PARTIES DEMAND TRIAL BY JURY** |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF BIAGIO STRAGAPEDE'S LOCAL RULE 56.1(a)(3) STATEMENT
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Biagio Stragapede ("Stragapede"), by and through his attorneys, Robbins, Salomon & Patt, Ltd., submits this statement of material facts as to which he contends there is no genuine issue and that entitle him to a judgment against Defendant City of Evanston ("Defendant") as a matter of law.

**A.        The Parties, Venue, and Jurisdiction.**

1.        Stragapede is a citizen of the State of Illinois residing at 2302 South Clinton, Berwyn, Illinois 60407.  *Verified Complaint at Law (the "Complaint")*, ¶ 2; *Deposition Transcript of Biagio Stragapede ("Biagio Transcript")*, attached hereto as **Exhibit 1**, p. 4, Lines 7-10.

2.        Defendant is an Illinois municipal corporation doing business in Evanston, Illinois. *Defendant's Answer* [Doc. No. 10], ¶ 3.

3.        This Court has jurisdiction pursuant to the Americans with Disabilities Act ("ADA" and sometimes referred to herein as the "Act") 42 U.S.C. § 12101, *et seq.*  Venue is

IZ4151 DOCX

proper pursuant to the Act and all parties are residents of the Northern District of Illinois. *Complaint*, ¶ 1; *Defendant's Answer*, ¶ 1.

**B.      Background.**

4.      On and about May 1996, Stragapede became an employee of Defendant's Public Works Department, Water Sewer Division, and remained employed by Defendant until September 24, 2010. *Defendant's Answer*, ¶¶ 4, 42.

5.      From May 1996 through September 24, 2010, Stragapede worked as an hourly employee, a Water Service Worker, under various supervisors and administrators for Defendant. His primary duties included installing and repairing commercial and residential water meters and outside reading devices, involving testing meters and water pressure, finding leaks, and replacing water meters and related parts. *Defendant's Answer*, ¶¶ 5, 42; *Exhibit 1 (Biagio Transcript)*, p. 5-6; *"City of Evanston Classification Standard for Waster Service Worker"* (the "Job Description")*, attached to Exhibit 3 (Biner Transcript) as Biner Exhibit 2*, and labeled as Defendant's Bates Stamp Nos. EV1205-EV1207.

6.      In September 2009, Stragapede sustained a brain and other injuries in a non-work-related accident. Stragapede was hospitalized at various medical institutions in and around the Chicagoland area as a result of his injuries. *Defendant's Answer*, ¶ 6; *Exhibit 1 (Biagio Transcript)*, pp. 45-46.

7.      At all relevant times prior to Stragapede's return to work for Defendant after his accident, Defendant maintained the Job Description for the Water Service Worker position which Plaintiff had held and wished to return to upon his recovery. Pursuant to the Job Description, the essential functions of the Water Service Worker position do not include using a computer or using global positioning software (GPS), and nowhere in the Job Description do the

IZ4151 DOCX

words "computer," "global positioning software" or "GPS" exist. *Job Description*, *Biner Exhibit 2, attached to Exhibit 3 (Biner Transcript)*; *Deposition Transcript of Dave Stoneback ("Stoneback Transcript")*, attached hereto as **Exhibit 2**, pp. 58-59; *Deposition Transcript of Vicki Biner ("Biner Transcript")*, attached hereto as **Exhibit 3**, pp. 117-118; *Deposition Transcript of Timothy Bartus ("Bartus Transcript")*, attached hereto as **Exhibit 4**, pp. 39-40; *Deposition Transcript of Judith Napoleon ("Napoleon Transcript")*, attached hereto as **Exhibit 5**, p. 65-66.

8.　　Stragapede, through his family, advised Defendant that he had been hospitalized in an accident unrelated to his employment but intentionally did not specifically disclose the nature of the medical condition to protect Stragapede's privacy. The family requested that Defendant and its employees refrain from further visits. *Exhibit 1 (Biagio Transcript)*, p. 49-50; *Deposition Transcript of Geanine Stragapede ("Geanine Transcript")*, attached hereto as **Exhibit 6**, pp. 46-47.

9.　　On October 2, 2009, while hospitalized and without the invitation of Stragapede or his family, Vicki Biner ("Biner"), Stragapede's supervisor within Defendant's Water Sewer Division, gained entry into the ICU at Loyola University Hospital and visited Stragapede without the family's consent. *Defendant's Revised Supplement [sic] Amended Answer to Paragraphs 8, 9, and 10 of the Complaint* [Doc. No. 16] ("Defendant's Amended Answer"), ¶ 8; *Exhibit 3 (Biner Transcript)*, p. 58, Lines 12-14.

10.　　Sometime in October 2009, Edwin Simon, Division Chief of Filtration for Defendant, also gained entry to the ICU at Loyola University Hospital and visited Stragapede without the family's consent. *Defendant's Amended Answer*, ¶ 9; *Exhibit 6 (Geanine Transcript)*, p. 53, Lines 9-14.

3

11.     Also on October 4, 2009, Juanita Willmore, a Water Sewer Division worker for Defendant, also gained independent entry to the ICU at Loyola University Hospital and visited Stragapede without Stragapede's or the family's consent,  claiming she was a friend of the family, which she was not.  Willmore was discovered alone in the room inspecting Stragapede's injuries and reviewing his medical bands.  *Defendant's Amended Answer*, ¶ 10; *Exhibit 6 (Geanine Transcript)*, pp. 49-56.

12.     None of the above-referenced employees of Defendant were affiliated with Defendant's human resources department or otherwise privy to the protected health information maintained by the Human Resources Department of Defendant.  *Defendant's Answer*, ¶ 11.

13.     On and after October 4, 2009, as a direct result of the injuries he sustained, Stragapede was placed on indefinite leave from his position with Defendant.  At no time did Stragapede and/or his family members advise Defendant of the specific cause of the injuries sustained by Stragapede.  *Exhibit 1 (Biagio Transcript)*, pp. 49-50; *Exhibit 6 (Geanine Transcript)*, pp. 46-48, 56-57.

14.     On or about February 2010, Stragapede and/or his wife contacted Defendant to seek a return to work.  *Defendant's Answer*, ¶ 13; *Exhibit 6 (Geanine Transcript)*, p. 81, Lines 18-23.

15.     Defendant required that Stragapede obtain a Fitness for Duty certification from one of its contracted corporate and occupational health services physicians at Omega Corporate & Occupational Services ("Omega"), a medical group associated with NorthShore University Health System.  *Defendant's Answer*, ¶ 14; *Exhibit 1 (Biagio Transcript)*, pp. 143-144.

16.     On February 19, 2010, Stragapede timely presented for medical evaluation at Omega.  Stragapede had a follow-up medical evaluation at Omega on February 27, 2010.

*Defendant's Answer*, ¶ 15; *"City of Evanston Off-The-Job Injury/Illness Form,"* Defendant's Bates Stamp 171-172, attached hereto as **Exhibit 7**.

17.     Sometime on or after February 19, 2010, Defendant determined that Stragapede was able to return to work on March 8, 2010.  *Exhibit 5 (Napoleon Transcript)*, pp. 55-57; *Exhibit 7*.

18.     On March 15, 2010, Dr. Jane Cullen, the Omega physician that had evaluated Stragapede, directed correspondence to Judith Napoleon ("Napoleon"), a human resources specialist working for Defendant, seeking a further independent neurological evaluation (the "referred exam") of Stragapede prior to clearing him for work.  *See Correspondence dated March 15, 2010 from Dr. Jane Cullen to Defendant*, Defendant's Bates Stamp No. EV1192, attached hereto as **Exhibit 8**; *Defendant's Answer*, ¶ 16; *Exhibit 5* (*Napoleon Transcript*), pp. 60-61.

19.     On March 17, 2010, Stragapede presented and obtained an independent neurological examination and completed the referred exam from an Omega neurologist, Dr. Zoran Grujic.[1]  *Defendant's Answer*, ¶ 17; *see Letter dated April 6, 2010 from Dr. Grujic to Defendant*, Defendant's Bates Stamp No. EV1193 and *Letter dated May 4, 2010 from Dr. Grujic to Defendant*, Defendant's Bates Stamp No. 670-671, both of which are attached hereto as **Group Exhibit 9**.

20.     On April 6, 2010 and May 4, 2010, the Omega neurologist, Dr. Zoran Grujic, wrote medical certification letters to Defendant describing Stragapede's disability and declaring that Stragapede showed no signs of motor or sensory deficits which would impinge upon his

---

[1] The deposition of Dr. Zoran Grujic recently was taken, but the deposition transcript has not been prepared.

IZ4151 DOCX

ability to perform his job. He had mild residual cognitive deficits involving retrieval memory and executive function. Dr. Grujic concluded that Stragapede could return to work. *Group Exhibit 9*; *Defendant's Answer*, ¶ 18.

21.     From April 6, 2010 through the present, Defendant was aware of Stragapede's disability. *Group Exhibit 9*.

22.     In his April 6, 2010 and May 4, 2010 letters to Defendant, Dr. Grujic also recommended a work trial to ensure Stragapede was able to perform the essential functions of his job. During the work trial, Dr. Grujic suggested that Defendant allow Stragapede to be monitored by a co-worker/colleague. *Group Exhibit 9*; *Defendant's Answer*, ¶ 19.

23.     In a second letter, dated April 7, 2010, Dr. Cullen directed a letter to Napoleon, a human resources specialist for Defendant, clearing Stragapede to return to work subject to a work trial with the supervisor. *See Letter dated April 7, 2010 from Dr. Cullen to Defendant*, Defendant's Bates Stamp No. 155, attached hereto as **Exhibit 10**; *Defendant's Answer*, ¶ 20; *Exhibit 5 (Napoleon Transcript)*, pp. 61-62.

24.     On April 26, 2010, Dr. Cullen sent a third letter to Defendant via Napoleon, which clears Stragapede to return to work and states that he "will likely need to use aides such as notepad/maps, etc." *See Letter dated April 26, 2010 from Dr. Cullen to Defendant*, Defendant's Bates Stamp No. 156, attached hereto as **Exhibit 11**; *Exhibit 5 (Napoleon Transcript)*, pp. 61-62.

25.     On May 19, 2010, Napoleon sent a letter to Stragapede informing him that his work trial would not be until June 2, 2010 because of necessary employees' vacation schedules. *See Letter from Defendant to Stragapede dated May 19, 2010*, Defendant's Bates No. 1098, attached hereto as **Exhibit 12**; *Exhibit 5 (Napoleon Transcript)*, pp. 62-63. Defendant cannot

IZ4151 DOCX

explain why Stragapede was not contacted to return to work between March 15, 2010 - May 19, 2010. *Exhibit 5 (Napoleon Transcript)*, pp. 63-64.

26.     At some point prior to Stragapede's return to work on or about June 2, 2010, Napoleon and Stoneback had a meeting to plan a "fair assessment and work trial." Exhibit 5 (Napoleon Transcript), p. 64, Lines 5-11. At that meeting, Napoleon and Stoneback reviewed Stragapede's job description and determined that the work trial would consist of a written test, a "tools recognition portion," and going out in the field to perform job duties. *Exhibit 5 (Napoleon Transcript)*, pp. 65-68.

27.     At some point prior to Stragapede's return to work on or about June 2, 2010, Stoneback had a meeting with at least the following employees of Defendant: Biner, Bartus, Laura Biggs, and Jim Nelson "to come up with a practical test to see whether or not he could perform his job duties." *Exhibit 2 (Stoneback Transcript)*, pp. 57-58; *Exhibit 4 (Bartus Transcript)*, pp. 115-117.

28.     The work trial Defendant prepared and conducted for Stragapede's return "was well thought out, and it wasn't put together haphazardly." *Exhibit 5 (Napoleon Transcript)*, p. 78, Lines 13-14.

C.     **Stragapede's Successful Completion of the Work Trial; Return to Work for Defendant and Termination.**

29.     At all relevant times since his return to work on or about June 2, 2010, Stragapede could perform the essential functions of a Water Service Worker as stated by Defendant in the Job Description. *Job Description, Biner Exhibit 2, attached to Exhibit 3 (Biner Transcript)*; *Exhibit 3 (Biner Transcript)*, p. 156, Lines 5-10 (Biner states that, after Stragapede returned to work in June 2010, "he could do the job"); p. 243, Lines 2-13 (Biner admits that Stragapede

IZ4151.DOCX

adequately completed all of his MCARE service order requests during June 2010), p. 223, Lines 3-11 (Biner states that in June 2010, Stragapede adequately used the computer because he completed electronic JULIE tickets); *Exhibit 4 (Bartus Transcript)*, p. 96, Lines 8-18 (Bartus states that Stragapede's completed work pursuant to JULIE tickets was "accurate"), pp. 98-99 (Bartus states that Stragapede "did a perfect job" installing meters in June 2010); *see Meter Shop Worksheets for Stragapede dated June 3, 2010 through July 1, 2010* ("Daily Worksheets"), Defendant's Bates Stamp Nos. EV1213-EV1217, EV1255-EV1306, EV1312, EV1318, EV1322-EV1323, attached hereto as **Group Exhibit 13**, each of which was approved by Stragapede's supervisor and contain no indication of problems with his job performance.

30. The only changes Defendant or its employees observed after Stragapede's return to work were changes in his demeanor following the accident, not his ability to perform his job. *Group Exhibit 13, Daily Worksheets*, each of which was approved by Stragapede's supervisor and contain no indication of problems with his job performance; *Exhibit 2 (Stoneback Transcript)*, pp. 112-113, p. 214, Lines 4-22; *Exhibit 3 (Biner Transcript)*, pp. 152-156; *Exhibit 4 (Bartus Transcript)*, p. 96, 98-99, 151, 213-214 (Bartus admits that he never observed Stragapede flustered while working in the field).

31. On or about June 2, 2010, Defendant had Stragapede perform a three-day work trial with his immediate supervisors, Biner and Bartus, as well as Stoneback and other employees of Defendant. Stragapede passed the work trial. *See Letter dated June 7, 2010 from Defendant to Stragapede*, Defendant's Bates Stamp No. EV1202, which states that Stragapede passed his work trial and could return to work, attached hereto as **Exhibit 14**; *Defendant's Answer*, ¶¶ 22-23; *Exhibit 2 (Stoneback Transcript)*, pp. 66-69; *Exhibit 3 (Biner Transcript)*, pp. 152-153; *Exhibit 4 (Bartus Transcript)*, pp. 122-124; *Exhibit 5 (Napoleon Transcript)*, pp. 67-68.

IZ4151 DOCX

32.     In the June 7, 2010 letter, Defendant directed Stragapede to take notes, call his supervisors if he needs assistance, and ask questions of other employees of Defendant should he need assistance.  This was not a special accommodation Defendant was making for Stragapede upon his return to work, but rather, "a reminder to utilize the people that he worked with for assistance."  *Exhibit 5 (Napoleon Transcript)*, pp. 68-71; *Exhibit 14*.

33.     It was the policy and procedure of Defendant from October 27, 2008 through 2010 to have the water department workers who were out in the field call in if they had a problem, whether personal or whether they saw a problem.  Defendant instructed Stragapede to let his coworkers know if he was having any difficulty out in the field, and when he did so, Stragapede complied with Defendant's policies and procedures.  *Exhibit 4 (Bartus Transcript)*, p. 63, Lines 13-21, p. 133, Lines 17-21, and pp. 159-160; *Exhibit 3 (Biner Transcript)*, p. 182, Lines 10-23.

34.     Between October 27, 2008 and 2010, it was the policy and procedure of Defendant that: 1) if an employee of the water department out in the field needed materials, they were permitted to return to the plant to pick up those materials, and 2) if the employee had problems with their tools while out in the field, they were permitted to return to the plant to pick up a new tool.  *Exhibit 4 (Bartus Transcript)*, pp. 63-64.

35.     It is customary for Defendant's water department workers out in the field to call another worker nearby to say, for example, "I broke my key, can you come and help me with this buffalo box?"  The workers are there to help one another, and if two water service workers were working together out in the field to help one another out, that is not a reason to write-up them up or to issue a warning.  *Exhibit 4 (Bartus Transcript)*, pp. 83-84.

36.     On or about June 28, 2010, Stragapede was assigned a job at 2672 Gross Point Road.  *See Group Exhibit 13*, at Defendant's Bates Stamp No. EV1318, EV1323.  Defendant failed to immediately assist Stragapede when he called for help with the Green Bay Road job assignment.  Rather, Bartus ordered Stragapede to return to the plant instead of providing him with instructions over the telephone, which Bartus could have done.  *Exhibit 4 (Bartus Transcript)*, pp. 77-78.

37.     Defendant did not specifically set up a meeting with Stragapede to see whether there was a reasonable accommodation that would help him stop having to come back to the office.  *Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-7, pp. 141-142; *Exhibit 5 (Napoleon Transcript)*, p. 103-105.

38.     The June 7, 2010 letter further advised that Stragapede would have to receive training on a new software program that had been implemented during his absence and advised Stragapede to keep a pad of paper and pencil to take notes regarding his assignments, and to have a map with him at all times.  *Exhibit 14*; *Defendant's Answer*, ¶ 24.

39.     Stragapede returned to work on June 7, 2010 with two pencils, paper, map, and a tape recorder, all as needed to allow him to perform his job in accordance with his clearance.  *Exhibit 1 (Biagio Transcript)*, p. 103, Lines 2-13.  Other employees of Defendant, including Bartus, Stragapede's Field Supervisor, keep a notepad and pen or pencil on their person while working for Defendant, which is not a violation of any policy or procedure of Defendant.  *Exhibit 4 (Bartus Transcript)*, pp. 127-128.

40.     On June 7, 2010, Stragapede received approximately one hour of training on the new software program, MCARE, maps software, and Irthnet software, and no more.  One hour of training on the MCARE program was not proper training, and other City employees were

IZ4151 DOCX

granted a longer training program. However, the MCARE program is not vital to water workers and is not used in the field. *Exhibit 3 (Biner Transcript)*, pp. 224-226; *Exhibit 4 (Bartus Transcript)*, p. 87, Lines 1-16.

41.     Regardless of any issues Stragapede may have had using the laptop computer, once he did, in fact, get logged in to his computer, whether he had to return to the plant or otherwise, he was able to use the computer adequately to perform the functions of his job. *Exhibit 2 (Stoneback Transcript)*, p. 120, Lines 5-20; *Exhibit 4 (Bartus Transcript)*, p. 96, 98-99; *Group Exhibit 13 (Daily Worksheets)*, each of which was approved by Stragapede's supervisor and contain no indication of problems with his job performance.

42.     Numerous times in June 2010, Stragapede requested that Defendant provide him with paper JULIE tickets, as Defendant had done in the past for all water workers (including Stragapede) and continued to do for other workers in June 2010. *Exhibit 1 (Biagio Transcript)*, pp. 199-202. Despite providing other Water Service Workers with paper JULIE ticket printouts before and during the time that Defendant used a computerized system for providing JULIE tickets, and despite the fact that Defendant abandoned its use of the computerized system and currently provides only paper JULIE tickets to workers, Defendant failed to offer Stragapede an accommodation of 1) printing out JULIE tickets, 2) providing additional computer training, or 3) providing him with login/logout help. *Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-24, p. 116, Lines 1-2, pp. 118-123, and pp. 141-142; *Exhibit 3 (Biner Transcript)*, p. 240, Lines 1-24, p. 241, Lines 1-11, and pp. 25-27; *Exhibit 4 (Bartus Transcript)*, p. 87.

43.     On or about July 1, 2010, Stragapede stubbed his toe while working at Defendant's plant, and he completed his work with no complaints from Defendant before

11

seeking medical treatment that day. *Exhibit 2 (Stoneback Transcript)*, p. 97-98; *Exhibit 4 (Bartus Transcript)*, pp. *148-149*.

44.    On July 2, 2010, Defendant placed Stragapede on administrative leave, with pay. *Defendant's Answer*, ¶ 27; *see Letter dated July 2, 2010 from Defendant to Stragapede*, Defendant's Bates Stamp No. EV1241, attached hereto as **Exhibit 15**.

45.    After Stragapede was placed on administrative leave, Defendant failed to discuss reasonable accommodations with him. *Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-24, p. 116, Lines 1-2, pp. 118-123, and pp. 141-142; *Exhibit 5 (Napoleon Transcript)*, pp. 103-105.

46.    Defendant placed Stragapede on administrative leave with the specific, predetermined intent to terminate him. *Exhibit 5 (Napoleon Transcript)*, pp. 97-98.

47.    There were several drafts of the letter to Stragapede terminating him, with the first draft dated August 5, 2010. Ultimately, specific references to Stragapede's disability were removed from the correspondence, including the statement, "This termination is not due to discipline, but to your disability." *See Draft Termination Letters from Defendant to Stragapede and Related Correspondence*, Defendant's Bates Stamp Nos. 1151-1167, EV1241-EV1245, EV1253-EV1254, and EV1341-EV1348, attached hereto as **Group Exhibit 16**; *Exhibit 5 (Napoleon Transcript)*, pp. 110-117.

48.    The draft termination letters from Defendant to Stragapede were not the "boilerplate" termination letters Defendant typically used in 2010 and instead were unique because Defendant sought to prevent Stragapede's attorneys from learning that Defendant intended to terminate Stragapede because of his disability and despite Defendant's failure to 1) meet with Stragapede to discuss proposed reasonable accommodations or 2) offer Stragapede any reasonable accommodations. *See Group Exhibit 16*, at Defendant's Bates Nos. 1167,

12

IZ4151 DOCX

EV1343, and EV1346; *Exhibit 2 (Stoneback Transcript)*, pp. 118-123; *Exhibit 5 (Napoleon Transcript)*, pp. 112-113.

49.     After Defendant placed Stragapede on administrative leave on July 2, 2010, and after Defendant was contacted by Stragapede's attorneys regarding the reasons for his placement on administrative leave, Defendant backfilled Stragapede's personnel file with new, self-serving documents, including, but not limited to, a summary of alleged "concerns," that were created by Defendant's employees only after Stragapede was placed on administrative leave. *Exhibit 5 (Napoleon Transcript)*, pp. 94-97; *Exhibit 2 (Stoneback Transcript)*, pp. 164-166; see Exhibit 23 to *Exhibit 2 (Stoneback Transcript)*, at Defendant's Bates Stamp Nos. 1172-1176.

50.     Without Stragapede's knowledge or consent, Defendant had conversations about Stragapede with his Omega neurologist, Dr. Grujic, and Omega physician, Dr. Cullen, on numerous occasions after he was placed on administrative leave. *Exhibit 2 (Stoneback Transcript)*, pp. 175-176; *Exhibit 5 (Napoleon Transcript)*, pp. 100-104; *see Email Correspondence from Defendant to Dr. Cullen dated July 8, 2010*, Defendant's Bates Stamp Nos. EV1313-EV1317, attached hereto as **Exhibit 17**; *see Letter from Dr. Grujic to Defendant dated July 16, 2010 and related correspondence*, Defendant's Bates Nos. 1126-1131, attached hereto as **Exhibit 18**; *see Letter from Defendant to Dr. Grujic dated August 23, 2010*, Defendant's Bates Nos. EV1203-EV1211, attached hereto as **Exhibit 19**; *see Letter from Dr. Grujic to Defendant dated September 9, 2010*, Defendant's Bates Nos. EV1200-EV1201, attached hereto as **Exhibit 20**.

51.     On August 23, 2010, approximately 18 days after Defendant first drafted a termination letter to Stragapede, in an email from Defendant to Stragapede's attorney, Defendant indicated that it was "still evaluating Gino's fitness for duty and it had been determined that Gino

IZ4151.DOCX

and the City would benefit from more comprehensive analysis," and that Stragapede will be asked to see Dr. Grujic again. *See Correspondence between Defendant's counsel and Stragapede's counsel*, Defendant's Bates Stamp Nos. 560-561, attached hereto as **Exhibit 21**; *Defendant's Answer*, ¶ 28; *Group Exhibit 16*, at EV1253-EV1254 and EV134-EV1342.

52.     In a letter to Defendant dated August 24, 2010, Stragapede, through counsel, requested that Defendant articulate the specific basis for Defendant's request that he submit to another neurological exam after the prior exams and work trial had proven him cleared for work. On September 21, 2010, Stragapede's counsel again contacted Defendant and requested that Defendant explain its position. Defendant never responded. *See Exhibit 21*, at Bates Stamp No. 560; *Letter from Stragapede's attorneys to Defendant dated August 24, 2010*, Defendant's Bates Stamp Nos. 534-536, attached hereto as **Exhibit 22**; *Defendant's Answer*, ¶ 29.

53.     Ultimately, on September 24, 2010, Defendant sent a letter to Stragapede informing him that he was terminated from his position with Defendant. The termination letter states that Defendant "consulted" with Dr. Grujic and provided him with a list of the behaviors that Stragapede allegedly was exhibiting and requested from Dr. Grujic a recommendation of accommodation that Defendant might be able to offer. *See Letter from Defendant to Stragapede dated September 24, 2010*, Defendant's Bates Stamp Nos. 122-123 (the "Termination Letter"), attached hereto as **Exhibit 23**; *Defendant's Answer*, ¶ 30.

54.     The Omega neurologist, Dr. Grujic, never examined nor conferred with Stragapede after his initial evaluation of Stragapede that resulted in Dr. Grujic's April 6, 2010 letter. *Group Exhibit 9; Exhibit 18; Exhibit 20*.

14

55.     Dr. Grujic did not opine that Stragapede posed a significant risk to the health or safety of himself, Defendant's other employees, or the public.  *Group Exhibit 9; Exhibit 18; Exhibit 20*.

56.     Despite the facts in Paragraphs 52 and 53 above, Defendant advised Stragapede in the Termination Letter that Dr. Grujic proposed as an accommodation that a co-worker accompanies him at all times to assist him.  The Termination Letter further stated that the Defendant determined that the Omega neurologist's suggested accommodation was not reasonable in the short or long term.  *Exhibit 23*; *Defendant's Answer*, ¶¶ 33-34.

57.     However, it is Defendant's custom and practice to permit a co-worker to ride along with another worker to assist him.  *Exhibit 3 (Biner Transcript)*, pp. 177-180.

58.     At no time did Stragapede ever request as a reasonable accommodation that he be accompanied at all times by a coworker.  *See ¶ 45 above; Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-24, p. 116, Lines 1-2, pp. 118-123, and pp. 141-142; *Exhibit 5 (Napoleon Transcript)*, pp. 103-105; *Defendant's Answer*, ¶ 35.

59.     At no time after Defendant placed Stragapede on administrative leave did Stragapede ask Dr. Grujic to suggest any additional reasonable accommodation on his behalf to Defendant, let alone that he be accompanied at all times by a coworker.  *Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-24, p. 116, Lines 1-2, pp. 118-123, and pp. 141-142; *Exhibit 5 (Napoleon Transcript)*, pp. 103-105.

60.     At no time did Stragapede ever approve or agree to Dr. Grujic's suggested reasonable accommodation that he would be accompanied at all times by a coworker, as he only became aware of the suggested reasonable accommodation upon receiving the Termination Letter.  *See ¶ 45 above*; *Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-24, p. 116, Lines 1-2,

IZ4151.DOCX

and pp. 141-142; *Exhibit 5 (Napoleon Transcript)*, pp. 103-105; *Exhibit 20;* and *Exhibit 23*, at Defendant's Bates Stamp No. 122.

61.     After receiving Dr. Grujic's letter dated September 9, 2010 suggesting the proposed reasonable accommodation that Stragapede be accompanied at all times by a co-worker, Defendant failed to discuss that proposed reasonable accommodation with Stragapede or explore any alternative reasonable accommodation with Stragapede, prior to sending him the Termination Letter.  *See ¶ 45 above*; *Exhibit 2 (Stoneback Transcript)*, p. 115, Lines 1-24, p. 116, Lines 1-2, and pp. 141-142; *Exhibit 5 (Napoleon Transcript)*, pp. 103-105; *Exhibit 20; Exhibit 23*.

62.     On December 16, 2010, Stragapede filed a Charge of Discrimination with the Chicago District Office of the Equal Employment Opportunity Commission (EEOC), a copy of which is attached to the Complaint as Exhibit A.

63.     On August 10, 2012, Stragapede was issued a Notice of Right to Sue by the EEOC, a copy of which is attached to the Complaint as Exhibit B.

Respectfully Submitted,

**BIAGIO STRAGAPEDE**

By: /s/ Tracy E. Stevenson
        One of his Attorneys

Tracy E. Stevenson (ARDC #6207780)
Desiree L. Lauricella (ARDC # 6306404)
ROBBINS, SALOMON & PATT, LTD.
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 – Telephone
(312) 782-6690 – Facsimile

IZ4151 DOCX

**Exhibit List**

1.     Deposition Transcript of Biagio Stragapede ("Biagio Transcript")

2.     Deposition Transcript of Dave Stoneback ("Stoneback Transcript")

3.     Deposition Transcript of Vicki Biner ("Biner Transcript")

4.     Deposition Transcript of Timothy Bartus ("Bartus Transcript")

5.     Deposition Transcript of Judith Napoleon ("Napoleon Transcript")

6.     Deposition Transcript of Geanine Stragapede ("Geanine Transcript")

7.     "City of Evanston Off-The-Job Injury/Illness Form," Defendant's Bates Stamp 171-172

8.     Correspondence dated March 15, 2010 from Dr. Jane Cullen to Defendant, Defendant's Bates Stamp No. EV1192

9.     Letter dated April 6, 2010 from Dr. Grujic to Defendant, Defendant's Bates Stamp No. EV1193 and Letter dated May 4, 2010 from Dr. Grujic to Defendant, Defendant's Bates Stamp No. 670-671 (Group Exhibit)

10.    Letter dated April 7, 2010 from Dr. Cullen to Defendant, Defendant's Bates Stamp No. 155

11.    Letter dated April 26, 2010 from Dr. Cullen to Defendant, Defendant's Bates Stamp No. 156

12.    Letter from Defendant to Stragapede dated May 19, 2010, Defendant's Bates No. 1098

13.    Meter Shop Worksheets for Stragapede dated June 3, 2010 through July 1, 2010, Defendant's Bates Stamp Nos. EV1213-EV1217 and EV1255-EV1306 ("Daily Worksheets") (Group Exhibit)

14.    Letter dated June 7, 2010 from Defendant to Stragapede, Defendant's Bates Stamp No. EV1202

15.    Letter dated July 2, 2010 from Defendant to Stragapede, Defendant's Bates Stamp No. EV1241

IZ4151 DOCX

16. Draft Termination Letters from Defendant to Stragapede and Related Correspondence, Defendant's Bates Stamp Nos. 1151-1167, EV1241-EV1245, EV1253-EV1254, and EV1341-EV1348 (Group Exhibit)

17. Email Correspondence from Defendant to Dr. Cullen dated July 8, 2010, Defendant's Bates Stamp Nos. EV1313-EV1317

18. Letter from Dr. Grujic to Defendant dated July 16, 2010 and related correspondence, Defendant's Bates Nos. 1126-1131

19. Letter from Defendant to Dr. Grujic dated August 23, 2010, Defendant's Bates Nos. EV1203-EV1211

20. Letter from Dr. Grujic to Defendant dated September 9, 2010, Defendant's Bates Nos. EV1200-EV1201

21. Correspondence between Defendant's counsel and Stragapede's counsel, Defendant's Bates Stamp Nos. 560-561

22. Letter from Stragapede's attorneys to Defendant dated August 24, 2010, Defendant's Bates Stamp Nos. 534-536

23. Letter from Defendant to Stragapede dated September 24, 2010, Defendant's Bates Stamp Nos. 122-123 (the "Termination Letter")

IZ4151 DOCX

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Grant Farrar, Corporation Counsel (gfarrar@cityofevanston.org)
Henry J. Ford, Jr., Assistant City Attorney (hford@cityofevanaston.org)
James Woywod, Assistant City Attorney (jwoywod@cityofevanston.org)
City of Evanston, Law Department
2100 Ridge Ave. #4400
Evanston, IL 60201

and I hereby certify that I have mailed by U.S. Postal Service the document to the following non-CM/ECF participants: None.

/s/ Tracy E. Stevenson
Attorney for Plaintiff
Robbins, Salomon & Patt, Ltd.
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
Phone: 312-782-9000
Fax: 312-782-6690
email: tsetevenson@rsplaw.com

IZ4151 DOCX