UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BIAGIO STRAGAPEDE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 08879 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF EVANSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Biagio "Gino" Stragapede alleges that his former employer, Defendant City of Evanston, discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*[1] The parties have filed cross-motions for summary judgment. R. 29, 43. For the reasons discussed below, Stragapede's motion is granted in part and denied in part, and the City's motion is denied.

**I. Background**

Stragapede began working as a water service worker for the City of Evanston in 1996. PSOF ¶¶ 4-5; DSOF ¶ 4. In 2009, Stragapede suffered a non-work-related head injury that required months of medical care. PSOF ¶ 6; DSOF ¶¶ 5. Stragapede had a four-inch nail lodged in his head after an accident with a nail gun

---

[1]The Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331. Citations to the docket are "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "PSOF" (for Stragapede's Statement of Facts) [R.30]; "DSOF" (for Evanston's Statement of Facts) [R. 42]; Def.'s Resp. to PSOF (for Evanston's Response to Stragapede's Statement of Facts) [R. 45]; Pl.'s Resp. to DSOF (for Stragapede's Response to Evanston's Statement of Facts) [R. 56].

in his garage. PSOF Exh. 2, Stragapede Dep. 44:21-45:9; R. 57, Pl.'s Resp. to Cross-Mot. and Reply at 13. When Stragapede asked to return to work in early 2010, the City requested that he first get a fitness-for-duty evaluation from a doctor. PSOF ¶ 15; DSOF ¶ 27. The first doctor to examine Stragapede was unable to clear him for duty, and she recommended that he receive an independent neurological assessment. PSOF ¶ 18; DSOF ¶ 29. The neurologist, Dr. Zoran Grujic, examined Stragapede and concluded that, though Stragapede suffered from "mild residual cognitive deficits," he "should be able to return to work." PSOF Exh. 9, Grujic Apr. 6, 2010 Letter. Dr. Grujic recommended a work "trial" supervised by a coworker to ensure that Stragapede could properly perform his job functions. *Id*. The City prepared for Stragapede a written test, tool recognition exam, and a fieldwork trial. PSOF ¶¶ 26-28. In June 2010, Stragapede completed the work trial, accompanied by his supervisors and other City employees. *Id*. ¶ 31. Stragapede passed the trial and was cleared to return to work. *Id*.; DSOF ¶ 31.

The City claims that there were several issues with Stragapede's job performance upon his return. DSOF ¶¶ 32-51. Less than a month after Stragapede returned to work, the City placed him on administrative leave pending an "assessment of [his] ability to perform [his] essential job functions." PSOF Exh. 15, July 2, 2010 Memorandum; DSOF ¶ 52. During Stragapede's administrative leave, the City communicated with Dr. Grujic about Stragapede's supposed performance issues. DSOF ¶¶ 54-55; Pl.'s Resp. to DSOF ¶¶ 54-55. Eventually, the City asked Stragapede to submit to another examination by Dr. Grujic. DSOF Exh. G, Anger

2

Aug. 23, 2010 email. Through his attorney, Stragapede asked the City to articulate its reasons for requiring another examination. PSOF Exh. 22, Gallegos Aug. 24, 2010 Letter. Evanston continued to communicate with Dr. Grujic, who said that the reported performance problems were consistent with cognitive dysfunction from Stragapede's brain injury. DSOF ¶¶ 58-59; DSOF Exh. H, Grujic Sept. 9, 2010 Letter. Dr. Grujic also said that "the simplest accommodation would involve having a co-worker go out on work assignments with Mr. Stragapede." DSOF Exh. H. Based in part on its discussions with Dr. Grujic, the City fired Stragapede on September 24, 2010. PSOF Exh. 23, Bobkiewicz Sept. 24, 2010 Letter. In December of 2010, Stragapede filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). R. 1, Compl. ¶ 50. After the EEOC issued a right to sue letter, Stragapede filed this lawsuit against the City, alleging that the City discriminated against him in violation of the ADA. *Id.* ¶ 46.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard also applies to cross-motions for summary judgment. *See Int'l Bhd. of Elec. Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, the Court must "constru[e] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Analysis

Under the ADA, Stragapede must prove that (1) he was disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job, with or without a reasonable accommodation, and (3) the City took an adverse employment action against him because of his disability or without making a reasonable accommodation for it. *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). In his motion for summary judgment, Stragapede argues that he can meet these requirements as a matter of law. *See* R. 29, Pl.'s Mot. Summ. J. In its cross-motion and response, the City argues that Stragapede cannot prove that he is disabled or that he performed the essential functions of his job. *See* R. 43, Def.'s Cross-Mot. Summ. J. and Resp. The City also claims that Stragapede was responsible for the breakdown in the interactive accommodations process and therefore cannot prevail under the ADA. *See id.* Construing all necessary inferences in favor of the party against whom each motion was made, Stragapede is entitled to

4

partial summary judgment as to the first element of his *prima facie* case. Neither party is entitled to summary judgment on the remaining issues.

## A. Disability

To succeed in a claim of discrimination under the ADA, a plaintiff must prove that he is disabled. *Basden*, 714 F.3d at 1037. A disability is defined as (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102. Stragapede claims that he can meet both the first and third definitions of disability under the ADA. Pl.'s Resp. to Cross-Mot. and Reply at 10-17. He also argues that the City has admitted that he is disabled. *See id.* at 10-11; Pl.'s Mot. Summ. J. at 8-9. The City responds that Stragapede has not presented any evidence that he meets the ADA criteria for a disability and that the "admissions" that Stragapede points to are hearsay and "not binding." Def.'s Cross-Mot. Summ. J. and Resp. at 8-10; R. 58, Def.'s Reply at 9-10. Construing all necessary inferences in favor of the City, as we must in evaluating Stragepede's summary judgment motion, it is possible for a reasonable trier to fact to conclude that Stragapede was not disabled under the first (and most commonly invoked) definition of disability. Stragapede is nevertheless entitled to partial summary judgment on the first element of his *prima facie* case because the undisputed facts show that Stragapede was "regarded as" disabled by the City, as defined by § 12102(1)(C).

Stragapede's primary argument is an overarching one, not specifically tied to the ADA's definition of disability. Specifically, Stragapede argues that the City admitted he was disabled in draft versions of Stragapede's termination letter and in correspondence to Dr. Grujic. *See* Pl.'s Mot. Summ. J. at 8. Some draft termination letters circulated among City employees do say that Stragapede's firing was "not due to discipline, but to [his] disability." PSOF Exh. 16, August 2010 Termination Letter Drafts at 19-29.[2] The final termination letter also advised Stragapede to seek disability benefits. PSOF Exh. 23 at 2. The letters between the City and Dr. Grujic do not use the word "disability," but they do discuss Stragapede's injury and include terms like "essential functions" and "accommodation," which, to be sure, are suggestive of the ADA framework. PSOF Exh. 40; PSOF Exh. 19, Earl Aug. 23, 2010 Letter at EV1203-04. But those "admissions" by the City do not amount to conclusive evidence that Stragapede is disabled under the ADA. Labelling someone as "disabled" under the ADA is a legal conclusion. *See Weigel v. Target Stores*, 122 F.3d 461, 466 (7th Cir. 1997) (holding that the phrase "qualified individual with a disability" under the ADA is a "term[ ] of art that must be understood within [its] . . . statutory context[ ]"). Because "disability" under the ADA is a term of art,

---

[2]In its cross-motion and response, Evanston argues that these letters are inadmissible hearsay and therefore cannot be considered in evaluating the motion for summary judgment. *See* Def.'s Cross-Mot. Summ. J and Resp. at 9. It is true that a court can only consider admissible evidence in evaluating a summary judgment motion, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009), but these letters are not hearsay. An opposing party's statement made through an employee in the scope of the employment relationship is a nonhearsay admission. Fed. R. Evid. 801(d)(2); *see also Young v. James Green Mgmt.*, 327 F.3d 616, 622 (7th Cir.2003) ("The Rule simply requires that the statement be made by an individual who is an agent, that the statement be made during the period of the agency, and that the matter be within the subject matter of the agency.").

merely using the word "disability" outside the context of litigation does not prove that the City believed that Stragapede was disabled *for the purposes of the ADA*. Statements made by non-lawyers outside of litigation are therefore not sufficient to establish that Stragapede meets the ADA's statutory definition of disability. (Even statements made by lawyers would not necessarily be conclusive on the issue.)

Stragapede must therefore go beyond those remarks about disability, and he must actually satisfy the definition of disability as set forth in the ADA. Stragapede first argues that he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The "operation of a major bodily function, including . . . neurological [and] brain . . . functions" is also a major life activity under the statute. *Id.* § 12102(2)(B). The EEOC's regulations interpreting the ADA instruct that "the term 'substantially limits' shall be construed broadly" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Stragapede argues that the cognitive impairment he suffered, which affected his memory, attention, and executive function, clearly fits under this definition. Pl.'s Resp. to Cross-Mot. and Reply at 12-14.

Evanston responds that Stragapede's own testimony undermines this conclusion. Def.'s Cross-Mot. Summ. J. and Resp. at 8-9. Perhaps because

7

Stragapede has to walk the tightrope of alleging that he is both disabled and able to perform the essential functions of his job, Stragapede admits that he is able to perform several major life activities. *See, e.g.,* PSOF ¶¶ 29-31 (stating that Stragapede was able to do his job after the accident); PSOF Exh. 1, Stragapede Dep. 61:10-62:6, 126:1-127:10, 235:14-238:7 (describing various events that illustrate that he could see, hear, walk, stand, lift, etc.). Although this evidence might not ultimately be convincing to a trier of fact, the Court cannot weigh conflicting evidence or make credibility determinations at the summary judgment stage. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Without a more express description of how Stragapede's injury has limited his major life activities, a reasonable jury could conclude that Stragapede was not disabled under the first ADA definition.

Moving on to the third definition of disability under the ADA, Stragapede also argues that he was "regarded as" disabled by the City. Pl.'s Resp. to Cross-Mot. and Reply at 15-17. A person is regarded as disabled by his employer if he "has been subjected to an action prohibited under this chapter because of actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(1)[3]; *see also* 29 C.F.R. § 1630.2(l)

---

[3]Congress changed the "regarded as" standard in 2008 amendments to the ADA. *See* ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008). Before the amendments, to establish "regarded as" liability, the plaintiff had to show that the employer believed that he was substantially limited in his ability to perform a major life activity. *See Steffen v. Donahoe*, 680 F.3d 738, 744-45 (7th Cir. 2012). Under the previous definition, "an employee was not 'regarded as' disabled by his employer unless his employer believed he satisfied the definition of 'disabled' under the ADA." *Id.* The amendments establish that the employer need not believe that the plaintiff is substantially limited in a major life activity. 42 U.S.C.

(identifying termination as an action prohibited under the ADA). Although the City's "admissions" that Stragapede was disabled do not conclusively establish that he met the first definition of disabled under the ADA, they do show that the City fired Stragapede because of his actual or perceived mental *impairment*. The draft letters clearly say that Stragapede's firing was "not due to discipline, but to [his] disability." PSOF Exh. 16 at 19-29. Even the final termination letter shows that Stragapede's actual or perceived mental impairments were the basis for the termination decision. The letter says that the City put Stragapede on leave because he was "repeatedly exhibiting behaviors that were limiting or jeopardizing [his] ability to effectively perform [his] essential job functions." PSOF Exh. 23 at 1. The City "did not address these troubling behaviors as disciplinary issues," but asked Dr. Grujic to "determine if the behaviors . . . were related to [his] previous injury." *Id.* According to the City, "Dr. Grujic did determine that [Stragapede's] exhibited behaviors were related to [his] injury." *Id.*; *see also* PSOF Exh. 20, Grujic Sept. 9, 2010 Letter at 1 ("Based on the examples that were provided it appears that Mr. Stragapede's pattern of behavior is consistent with executive dysfunction and therefore is related to his brain injury."). Dr. Grujic suggested that "the simplest accommodation would involve having a co-worker go out on work assignments with Mr. Stragapede." PSOF Exh. 20 at 1. Because the City believed Dr. Grujic's suggested accommodation to be unreasonable, it fired Stragapede. PSOF Exh. 23 at

---

§ 12102(3). Now, the "regarded as" prong only requires that the employer took adverse action against the plaintiff *because of* an actual or perceived impairment. *Id.* These amendments became effective on January 1, 2009, before the events in this case, and therefore apply here.

9

1-2. The City does not dispute the contents of the final termination letter, DSOF ¶ 62, nor does it present any evidence that creates a genuine dispute of fact as to whether Stragapede was "regarded as" disabled under the definition provided in Section 12102(3). *See* Def.'s Cross-Mot. Summ. J. and Response at p. 9-10 (arguing that Stragapede was not "regarded as" disabled, but supplying no facts); Def.'s Reply at 9-10 (replying to Stragapede's argument that he met the disability requirements under the ADA, but supplying no facts on the "regarded as" issue). Based on the undisputed facts presented by the parties, a reasonable juror could find only that the City did terminate Stragapede because of an actual or perceived mental impairment. Because the undisputed facts establish that Stragapede was disabled under the "regarded as" prong of the ADA, his motion for summary judgment is granted in part.

In its cross-motion for summary judgment, the City does not come close to establishing that Stragapede is *not* disabled as a matter of law under the first definition of disability under the ADA. The "substantially limits" standard is "construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1). The City's own description of the behaviors Stragapede exhibited on his return to work could easily support the conclusion that Stragapede struggled with major life activities like concentration and neurological function. The City claims that Stragapede needed help logging in to his computer "several times a day, every day" even though both the password and the username were "Gino." DSOF ¶¶ 38-40. It alleges that Stragapede failed to keep full attention on the road while driving. *Id.*

¶¶ 41-44. In its correspondence with Dr. Grujic, the City reported several instances in which Stragapede was forgetful, confused, or inattentive. PSOF Exh. 19 at EV1208-11. Construing all inferences in favor of Stragapede, a reasonable jury could certainly find that Stragapede was substantially limited in major life activities. The City's motion for summary judgment is therefore denied on the issue of Stragapede's disability under the ADA.

### B. Essential Functions

Returning now to Stragepede's summary judgment motion, Stragapede argues that he could perform the essential functions of his job, with or without accommodations. Pl.'s Mot. Summ. J. at 9-13. Essential functions are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n). EEOC regulations instruct that:

> Evidence of whether a particular function is essential includes, but is not limited to: (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

*Id.* Relying on the written job description for a water service worker, Stragapede argues that his supervisors acknowledged that he adequately performed the essential functions. Pl.'s Mot. Summ. J. at 10-11; PSOF ¶¶ 29-31, 41. The City first responds, both in resisting Stragepede's motion and in arguing for the City's summary judgment motion, that the written job description is not the exclusive source of essential functions, and that using a laptop was an essential function of

11

the job. Def.'s Cross-Mot. Summ. J. and Resp. at 13-14. It further argues that Stragapede's performance issues demonstrate that he was not able to perform the essential functions. *Id.* at 13-15. And, even if Stragapede could perform these functions with reasonable accommodations, the City claims he should not be able to claim liability under the ADA because he was responsible for the breakdown in the interactive accommodations process. *Id.* at 19-24. Finally, the City claims that Stragapede is precluded from claiming that he could perform his job under the ADA because he receives Social Security disability benefits. *Id* at 10-11. Because a reasonable jury could find for either party, neither is entitled to summary judgment on this issue.

Even putting aside the question of whether laptop use itself is an essential function, there is a genuine dispute of fact as to whether Stragapede could perform the agreed-upon essential functions of the position. Based on the written job description, three essential functions of the job are "[l]ocat[ing] water mains and services requested by JULIE,"[4] "install[ing] and remov[ing] meters," and "[l]ocating and shut[ting] off water service for delinquent accounts." PSOF Exh. 3, Biner Dep. Exh. 2. The City provides evidence of a few instances after Stragapede's return to work in which he was unable to complete these tasks. DSOF ¶¶ 44-48. On one occasion, the City claims that Stragapede could not perform a JULIE locate order because he went to the wrong location entirely. *Id.* ¶¶ 44-46. Stragapede testified that "[w]hat I was seeing on my display, computer, the map, and what I was seeing

---

[4] JULIE stands for "Joint Underground Locating Information for Excavators." Def.'s Cross-Mot. Summ. J. and Resp. at 13.

12

in the street and parkway weren't the same." PSOF Exh. 1, Stragapede Dep. at 221:18-223:9. His supervisor asked him to return to the office, and another worker completed the JULIE locate order. *Id.* at 223:10-226:10; PSOF Exh. 4, Bartus Dep. at 136:14-137:14. The City claims that the GPS system in the City truck that Stragapede was driving showed that he was in the wrong location—more than a mile away from the actual JULIE site. PSOF Exh. 4, Bartus Dep. at 181:7-182:11; PSOF Exh. 3, Biner Dep. at 311:15-313:18. On another occasion, the City claims that Stragapede could not perform a water shut-off. DSOF ¶ 47. Stragapede admits that he needed assistance to perform the shut-off, but says that it was because his key would not work. PSOF Exh. 1, Stragapede Dep. at 234:22-235:8. The City also describes an incident in which Stragapede went to perform a meter installation and spent two hours at the site without installing the meter. DSOF ¶ 48. Stragapede admits that this occurred, but explains that this time was spent talking to the building's contractor about water service. PSOF Exh. 1, Stragapede Dep. at 235:14-238:21. Stragapede's supervisor testified that when she asked why he did not report to the office for two hours, Stragapede told her that he did not know. PSOF Exh. 3, Biner Dep. at 307:22-308:22. The parties also agree that, as an essential function of his job, Stragapede was required to drive safely. DSOF ¶ 17; Pl.'s Resp. to DSOF ¶ 17; Pl's Reply at 6. The City claims that Stragapede was seen driving through a busy intersection while looking down. DSOF ¶¶ 42-43. Stragapede admits that this happened but explains that he was trying to reach for a clipboard that fell at his feet. PSOF Exh. 1, Stragapede Dep. at 211:8-13. Whether Stragapede's explanations

13

of these events are persuasive is not for the Court to decide on summary judgment. Nor can the court weigh the City's evidence of these instances against the statements of Stragapede's superiors suggesting that he could perform his job (described more fully below). Construing inferences in the City's favor, a reasonable trier of fact could conclude from the evidence provided by the City that Stragapede could not perform the agreed essential functions of locating JULIE orders, shutting off water service, installing water meters, and driving safely.

Unfortunately for the City, these same disputes of fact prevent it from establishing that Stragapede *could not* perform his essential job functions. Stragapede provides explanations for the incidents that the City claims illustrate that he was not able to do his job. A reasonable juror could believe Stragapede's explanations and conclude that the incidents described by the City do not illustrate a failure to perform the job's essential functions. Stragapede also presents evidence that his supervisors said he was performing adequately. His supervisors testified that, after his return to work, Stragapede "could do the job," he properly completed several tasks, his work was "accurate," and that he did a "perfect job" installing a meter when supervised. PSOF Exh. 3, Biner Dep. at 156:5-10, 223:3-11, 243:2-13; PSOF Exh. 4, Bartus Dep. at 96:12-18, 98:15-99:11. Construing all inferences in favor of Stragapede, a juror could conclude that he was adequately performing the essential functions of his job.

The City also argues that laptop use was an essential function of the job that Stragapede could not perform. According to the City, Stragapede needed help with

14

using his laptop "several times a day, every day" even though the password and username were "Gino." DSOF ¶¶ 38-40. Based on the undisputed evidence, however, neither party can establish that computer use is or is not an essential function as a matter of law. On one hand, written job descriptions are only one source of evidence on essential functions. *See* 29 C.F.R. § 1630.2(n). An employer's judgment as to what constitutes an essential function should also be considered. *Id.* Stragapede concedes that completing JULIE locates was an essential function of his job, and that his supervisors "expected him to get the JULIE locates off the laptop out in the field in his truck." Pl.'s Resp. to DSOF ¶ 18. Based on this, a reasonable jury could conclude that laptop use was an essential function of Stragapede's job. On the other hand, Stragapede has presented evidence that not all employees use the computer programs in the field, PSOF Exh. 4, Bartus Dep. at 87:1-16, and the City says that the computer programs are no longer used. *See* Def.'s Cross-Mot. Summ. J. and Resp. at 14 ("Simply because retrieval of JULIE tickets electronically is something that was not done in the past or something that is not done currently is irrelevant."). The change to no-computer use now is relevant (not dispositive, but relevant) to showing that it was not essential before. Stragapede also presents evidence that the computer is not the only way to complete JULIE locates. Pl.'s Resp. to DSOF ¶ 17. From all this, a reasonable juror could also conclude that computer use was not an essential function of Stragapede's job.

Even if Stragapede could not perform the essential duties on his own, he is still a qualified individual under the ADA if he could perform his essential duties

15

with a reasonable accommodation. In moving for summary judgment, Stragapede claims that providing hard copies of his job routes at the beginning of each day would allow him to successfully complete his JULIE locates without having to return to the plant. Pl.'s Mot. Summ. J. at 13. The facts in the record, however, are sufficient to support a finding that this accommodation would not be effective. Although some JULIE locates could be performed in 24- or 48-hour windows, emergency JULIE locates had to be performed within just two hours. PSOF Exh. 3, Biner Dep. at 312:11-15. From this, a reasonable jury could conclude that, even with the accommodation, Stragapede would not be able to complete all JULIE locates properly. Furthermore, as noted above, Stragapede's problem with completing JULIE locates was not the only basis on which a jury could conclude that he had failed to perform the essential functions of his job. Stragapede's motion for summary judgment is therefore denied as to whether he could perform the essential functions of his job.

The City argues that, even if there were reasonable accommodations that might have allowed Stragapede to perform his essential functions, Stragapede's claim still fails because he was responsible for causing a breakdown in the interactive accommodations process. Def.'s Cross-Mot. Summ. J. and Resp. at 20-24. Under the ADA, an employer "must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). *See also* 29 C.F.R. § 1630.2(o)(3). When the interactive process breaks down, "courts should

look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). "In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* Based on the evidence in the record, a reasonable jury could find that either party was responsible for the breakdown in the process. It is true that when the City asked Stragapede to undergo another medical examination, Stragapede was hesitant. *See* PSOF Exh. 22. Through his attorney, Stragapede questioned what the City's basis was for needing a new assessment and refused to comply until his questions were answered. *Id.* ("If my client will submit voluntarily for examination, he will not do so until the questions raised in this letter have been answered."). The City claims that this letter was an "outright refusal" to engage in the accommodations process. Def.'s Cross-Mot. Summ. J. and Resp. at 22. Based on the language of the letter, however, a reasonable juror could conclude that the letter was not a breakdown in the process. Rather, Stragapede was merely requesting more information in an attempt to understand the City's problems with his performance. A reasonable juror could also conclude that the *City* was responsible for the breakdown. And the record shows that there were draft termination letters circulating several days before the City asked Stragapede to see Dr. Grujic again. PSOF Exh. 6 (showing drafts sent on August 13, 2010); *see also* DSOF Exh. G (stating on August 23, 2010 that the City intended to ask Stragapede to see Dr. Grujic again). There is also no evidence in the

17

record that the City ever responded to the letter from Stragapede's attorney or articulated to Stragapede why he should see Dr. Grujic again. At this stage, the City cannot establish as a matter of law that Stragapede was responsible for the breakdown of the interactive process.

Finally, the City argues that Stragapede's receipt of Social Security Disability Insurance (SSDI) benefits contradicts his claim that he was able to perform the essential functions of his job under the ADA. Def.'s Cross-Mot. Summ. J. and Response at 10-11. Because an individual must be unable "to engage in any substantial gainful activity" to receive SSDI benefits, 42 U.S.C. § 423(a), (d), the City alleges that his ADA claim is "squarely contradictory" with his receipt of these benefits. Def.'s Cross-Mot. Summ. J. and Response at 10-11. Although statements made in pursuing Social Security benefits might contradict those made in pursuit of an ADA claim, SSDI benefits-eligibility and the ADA "do not inherently conflict to the point where courts should apply a special negative presumption." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999). A claim for SSDI benefits and a claim under the ADA can coexist because the legal standards under the statutes differ. *Id.*; *see also Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir. 1999); *Weigel*, 122 F.3d at 466. It is true that when a conflict exists, such as when a plaintiff's sworn prior statements contradict his ADA claims, "the court should require an explanation of any apparent inconsistency." *Cleveland*, 526 U.S. at 807; *see also Lawson v. CSX Transp., Inc.* 245 F.3d 916, 927-28 (7th Cir. 2001). An explanation is only required, however, if such an inconsistency exists. *See*

*Cleveland*, 526 U.S. at 806 ("[P]laintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will negate an essential element of her ADA case—at least if she does not offer a sufficient explanation."); *Devine v. Bd. of Comm'rs of Elkhart Cnty.*, 49 Fed. Appx. 57, 60-61 (7th Cir. 2002) ("A claimant's own statements about her inability to work may invoke the doctrine of judicial estoppel."). The City has not presented evidence of any contradictory statements made by Stragapede in his SSDI proceedings; it only submits the bare conclusion that Stragapede is receiving SSDI benefits.[5] Def.'s Cross-Mot. Summ. J. and Response at 10-11. Because the receipt of SSDI benefits and an ADA claim are not inherently contradictory, the mere fact that Stragapede receives benefits is not fatal to his claim that he could perform the essential functions of his job. The City's motion for judgment is therefore denied.

---

[5]It appears that the only information that the City has about Stragapede's SSDI benefits is that he is receiving them. *See* Def.'s Cross-Mot. Summ. J. and Resp. at 10-11.

## IV. Conclusion

For the reasons discussed above, Stragapede's motion for summary judgment is granted as to his claim that he meets the definition of disability under the ADA's "regarded as" definition. The remainder of his motion is denied. The City of Evanston's motion for summary judgment is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2014