| | | |
|---|---|---|
| BIAGIO STRAGAPEDE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 08879 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF EVANSTON, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Biagio Stragapede filed this lawsuit, alleging that his former employer, the City of Evanston, discriminated against him in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*[1] On March 13, 2015, after a week-long trial, the jury returned a verdict for Stragapede. R. 127, 03/13/15 Minute Entry.[2] Stragapede now moves under Federal Rule of Civil Procedure 54(d) for reasonable attorneys' fees and costs as permitted by the ADA. *See* R. 225, Pl.'s Am. Fee Pet.; *see also* 42 U.S.C. § 12205. For the reasons discussed below, the Court awards Stragapede $345,355.40 in attorneys' fees and $10,114.27 in costs.

### I. Background

The Court detailed the facts of this case in its summary judgment opinion, R. 70, and recounted them in its post-trial opinion, R. 191. Only a brief summary of the litigation is necessary for purposes of this opinion.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number and, when necessary, the page or paragraph number.

Gino Stragapede began working as a water service worker for the City of Evanston in 1996. In 2009, Stragapede suffered a non-work-related head injury while at home. He returned to work in early 2010. Later that year, the City fired Stagapede, and in November 2012, Stragapede filed this lawsuit, alleging that the City discriminated against him in violation of the ADA. After nearly three years of litigation and a week-long trial, the jury returned a verdict for Stragapede. 03/13/15 Minute Entry. The jury awarded Stragapede $225,000 in compensatory damages for past and future emotional pain and suffering, *id.*, and the Court later held that Stragapede was entitled to $354,070.72 in back pay plus post-judgment interest, R. 151. The City thereafter moved for a new trial, judgment as a matter of law, remittitur, and amendment of the judgment, all of which the Court denied. *See* R. 191. The City has since appealed to the Seventh Circuit; the appeal is on the merits of the judgment, so this Court still has jurisdiction to decide the fee petition.

## II. Standard

In determining the reasonableness of a fee award, the Court begins with the lodestar figure, which represents "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *See Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court may then adjust that figure based on the factors set forth in *Hensley v. Eckerhart*, such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether

appropriate billing judgment was used. 461 U.S. at 429-30 & n.3. The party requesting the fee has the burden of proving its reasonableness, including the hourly rate and appropriate hours expended. *Id.* at 437; *see also, e.g.*, *Benito M. v. Bd. of Educ. of Chi., Dist. 299*, 544 F. Supp. 2d 713, 720 (N.D. Ill. 2008). Finally, federal district courts have considerable discretion in granting an award of attorneys' fees. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010).

### III. Analysis

In this case, Stragapede seeks $357,286.50 in attorneys' fees and $10,114.27 for related costs.[3] R. 225-1, Joint Statement ¶ 3; Pl.'s Am. Fee Pet. at 2. The City does not dispute that the rates charged by Stragapede's attorneys are reasonable. *See* R. 225-2, Def.'s Local Rule 54.3(d) Correspondence at 1; R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. Instead, the City objects to some of the hours expended on the case. Specifically, the City identifies six broad-based objections to Stragapede's fee petition: (1) some entries are duplicative and some work was overstaffed; (2) excessive time was spent on certain legal tasks; (3) "block billed" entries are too vaguely described; (4) some entries charge for clerical work; (5) some entries and costs include improper charges related to the labor arbitration brought by Stragapede's union; and (6) some entry descriptions are excessively redacted so that the City cannot determine their reasonableness. *See* R. 225-2, Def.'s Local Rule 54.3(d) Correspondence; R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.; R. 238, Def.'s Resp. Br. In all, the City

---

[3]Stragapede also seeks prejudgment interest on these figures. *See* Pl.'s Am. Fee Pet. at 14-15. The Court addresses the prejudgment interest issue later in this opinion. *See infra* Section III.7.

contends that the total requested fees should be reduced to $238,779.00, and that the total requested costs should be reduced to $8,831.40. R. 225-1, Joint Statement ¶ 5; Def.'s Resp. Br. at 1. The Court addresses each set of objections, as well as Stragapede's request for prejudgment interest on the fee award, in turn.[4]

## 1. Duplicative Entries and Overstaffing

The City maintains that Stragapede cannot recover fees for duplicative or redundant work. Def.'s Resp. Br. at 2-5. In particular, the City contends that Stragapede should not receive fees for work done by three of his attorneys—Andrés Gallegos, Jennifer Sender, and Scott Spears[5]—on the grounds that their work was not needed and amounted to inefficient overstaffing. *Id.* To support this contention, the City points out that none of those attorneys even had to file an appearance in the case and that their work was limited to very discrete aspects of the litigation. *Id.*

Courts must "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009); *see also Jardien v. Winston Network, Inc.*, 888 F.2d

---

[4]Stragapede submitted a redacted version of his counsels' billing records in support of his fee petition, *see* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart, which of course is acceptable within reasonable limits, *see* N.D. Ill. Local Rule 54.3(d)(5)(A) (time records may "be redacted to prevent disclosure of material protected by the attorney-client privilege or work product doctrine"). In order to effectively evaluate the fee petition and the parties' accompanying briefs, the Court asked that Stragapede file an unredacted version of those records under seal and *ex parte*, *see* R. 252, 09/14/16 Minute Entry, which he did, *see* R. 253 (sealed). The Court has reviewed this unredacted version and addresses the City's "excessive redaction" objections below, *see infra* Section III.6.

[5]The City objects to all hours billed by Gallegos, Sender, and Spears; in the alternative, however, the City objects to specific itemized entries lodged by those attorneys. *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

1151, 1160 (7th Cir. 1989). This is in part because law firms have a general tendency to overstaff cases. *Jardien*, 888 F.2d at 1160. But whether a party's counsel is guilty of staffing overkill depends on the circumstances, including the complexity of the case and the length of the litigation. *See, e.g.*, *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985) (affirming district court's decision refusing to reduce compensable hours where four attorneys worked on the plaintiff's case in part because "[it] was a difficult case with significant social effects"); *LaSalvia v. City of Evanston*, 2012 WL 2502703, at *2 (N.D. Ill. June 28, 2012) (reducing a second trial attorney's compensable hours after observing that "Plaintiff makes no suggestion that the case was unusually complex"); *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1021 (N.D. Ill. 2009) (assessing the defendant's excessive-time objections in light of the "complexity of [the] lawsuit … [as] reflected in the numerous orders and reported decisions issued … over the last decade"). The Court will discuss each of the attorneys to which the City objects.

### a. Andrés Gallegos

Andrés Gallegos has been Stragapede's personal lawyer since 1998 and was responsible for bringing this case to the law firm. *See* R. 225-8, Gallegos Aff. ¶ 7. Gallegos investigated Stragapede's case before filing the complaint; communicated with Stragapede and co-counsel throughout the litigation; and intermittently worked on the case during discovery and summary judgment, as well as at trial. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The City maintains that Stragapede should not receive a fee award for any of the time Gallegos billed to the case, and in

the alternative, objects to specific itemized entries recorded by Gallegos. R. 225-2, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

After reviewing the record, the Court concludes that the majority of the time that Gallegos billed to the case was reasonable. The City objects to the 5.30 hours that Gallegos billed for drafting a background memo about the case before Stragapede even filed the complaint. Def.'s Resp. Br. at 3. Even though the entries detailing Gallegos's work on the background memo could be more specific, it is appropriate for attorneys to investigate the merits of a case before filing a complaint. And taking 5.30 hours to memorialize this case's background, given its factual complexities (several discrete events were at issue), is an appropriate amount of time. *See Duran v. Town of Cicero*, 2012 WL 1279903, at *4 (N.D. Ill. Apr. 16, 2012) (concluding that hours billed to investigating a case was reasonable after observing that "[t]he 6.9 hours seems an appropriate amount of time, and we have no reason to be skeptical about it").

Likewise, the 2.50 hours that Gallegos billed for finalizing the complaint and the 1.70 hours he billed for reviewing a research clerk's research memo in October 2012 are also reasonable. Gallegos and Tracy Stevenson (Gallegos's co-counsel and Stragapede's lead trial counsel) spent less than 10 hours combined on drafting the multi-count complaint. And spending a modest amount of time *reviewing* applicable ADA law—it is not as if Gallegos spent hours and hours *conducting* the research himself—to ensure that the allegations in the complaint were sufficient to survive a motion to dismiss does not constitute duplicative work. *See Duran*, 2012 WL

1279903, at *5 (observing that "the drafting of the complaint in this case was a major project in itself, and conferring with co-counsel, who would share responsibility for it, was necessary"). Stragapede receives credit for all of these entries.

There is, however, one entry[6] that evidences overstaffing. Gallegos billed two hours to "[a]ttend trial" on March 9, 2015. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The problem is that the entry does not describe what Gallegos actually did during those two hours, other than "attend" the trial. In light of Gallegos's limited role in the litigation immediately leading up to trial, the Court can only surmise that he merely observed the proceedings that day. What's more, in addition to Gallegos, two other partners (Stevenson and Scott Spears) also billed time to attending the trial on March 9, 2015. Though this case was fairly complex, it did not warrant three partners' participation at the trial. *See Smith v. Altman*, 2015 WL 5675376, at *9 (N.D. Ill. Sept. 21, 2015) (reducing counsels' fees after observing that "throughout the trial it was clear that the three attorneys at counsel table, plus the additional associate and law clerk sometimes in attendance, was overstaffing"). The fact that the Court will credit Spears for his participation at trial, *see infra* Section III.1.c., further supports striking the time Gallegos billed for merely attending the trial. Gallegos's hours, therefore, are reduced by 2.00 hours.

---

[6]The City's objections to the time that Gallegos billed to the AFSCME Arbitration in October and November 2010, as well as to the entries recorded by Gallegos that allegedly contain excessive redactions, are addressed below. *See infra* Sections III.5-6.

### b. Jennifer Sender

Jennifer Sender, another partner at the firm, spent a total of 14.30 hours working on the case. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart; R. 225-9, Sender Aff. ¶ 4. Specifically, Sender edited Stragapede's combined reply to his motion for summary judgment and response to the City's cross-motion for summary judgment. R. 225-1, Stevenson Aff. at Exh. B, Fees Chart; Pl.'s Am. Fee Pet. at 11-13. Stragapede asserts that Sender jumped-in to oversee the "final preparation of the [c]ross [m]otions for [s]ummary [j]udgment while Ms. Stevenson was unavailable," and maintains that this type of oversight over complex motions is "reasonable and not merely overzealous overstaffing … ." Pl.'s Am. Fee Pet. at 11-13. The City objects to all 14.30 hours billed by Sender on this case. *See* Def.'s Resp. Br. at 4-5. This is because Sender's time "is block billed [and] billed concurrently with … time purportedly incurred by [two] other partners and one associate." *Id.* at 4.

Stragapede will not receive fees for Sender's work on the case. Sender had nothing to do with the case aside from the 14+ hours she spent on one summary judgment brief. It would have been much more efficient for Stevenson, or even Gallegos (who was already familiar with the case), to edit and revise that brief. And although Stragapede asserts that Sender only worked on the case "wh[en] Ms. Stevenson was unavailable," Pl.'s Am. Fee Pet. at 12, there is no evidence to back that assertion up. Indeed, the Court granted Stragapede a 21-day extension (in addition to the 14 days initially allotted) to file the combined reply and response

brief. *See* R. 28, 10/09/13 Minute Entry; R. 52, 12/09/13 Minute Entry. And even if Stevenson was wholly unavailable during that 35-day period—an assumption that the time entries disprove—Stragapede offers no explanation as to why Sender, and not Gallegos, was the appropriate person to oversee "the final preparation[s] … ."[7] Pl.'s Am. Fee Pet. at 11. The Court hastens to add that Sender's fees are unreasonable for another reason: Stragapede's counsel spent at least 85 hours (the Court calculated 87.90 hours) on the combined reply and response brief alone.[8] To be fair, the summary judgment briefing was fairly robust. And it is not unreasonable to credit time spent by more than one attorney on drafting and editing a court filing. *See Dupuy*, 648 F. Supp. 2d at 1020 (rejecting the defendant's objections to duplicated effort after observing that "[o]ften, one attorney was obviously the draftsman of a court filing, and the other the primary editor"). But even so, this does not support *Sender's* work on the brief. Because Stevenson or Gallegos, and not Sender, should have been the partner in charge of overseeing the summary judgment briefs, the Court declines to award Stragapede any fees for Sender's work on the case.[9]

---

[7]Neither Stevenson nor Sender addresses this issue in their affidavit. *See* R. 225-1, Stevenson Aff.; R. 225-9, Sender Aff.

[8]This figure includes the time spent on Stragapede's Response to the City's Local Rule 56.1(a)(3) Statement of Facts.

[9]Stragapede could have made a case for awarding fees for the amount of time Stevenson would have taken to do the same work that Sender did. (Given her unfamiliarity with the case, Sender likely took longer to edit the brief than Stevenson would have.) But Stragapede did not make this argument, so the Court will discount all of the time Sender spent on this case from the attorneys' fee calculation.

### c. Scott Spears

Scott Spears began working on this case less than a month before trial.[10] His work included "assist[ing] [with] … final trial preparation, client preparation[,] and witness coordination during trial and immediately before trial." Pl.'s Am. Fee Pet. at 13. The City asserts that Stragapede is not entitled to any fees for this work because he was a late addition to the trial team who did not play any substantive role at trial. Def.'s Resp. Br. at 5.

But the fact that Spears joined the case just weeks before trial is not, by itself, evidence of overstaffing. *See Smith*, 2015 WL 5675376, at *9 (declining to reduce counsels' fees by 20% solely based on "the addition of Ms. Yarusso to the trial team"). What matters is whether his work on the case was reasonable. *See Schlacher*, 574 F.3d at 858-59; *see also, e.g.*, *LaSalvia*, 2012 WL 2502703, at *2 (disallowing award for a second attorney added shortly before trial after concluding that "Plaintiff has failed to establish that it was reasonable for Mr. Dolezel to bill 56.25 hours in this case").

Based on the record, the Court concludes that, generally speaking, the time Spears spent preparing for trial and assisting Stevenson during the trial was reasonable. In terms of trial preparation, Spears, among other things, prepared witness examinations, worked through trial exhibit issues with Stevenson and Lamar (a paralegal), conducted research and prepared a motion on the use of

---

[10]Spears billed less than an hour to the case in December 2013 for work done on a summary judgment brief. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. For the same reasons that the Court declines to credit the time Sender spent on that briefing, *see supra* Section III.1.b, so too does the Court decline to award fees for Spears's summary judgment work. Spears's hours, therefore, are reduced by 0.80 hours.

deposition testimony at trial, and familiarized himself with the Court's rules on the presentation of evidence. R. 225-1, Stevenson Aff. at Exh. B, Fees Chart; *see also* Pl.'s Am. Fee Pet. at 13 ("Spears … was called upon to assist in the final trial preparation, client preparation and witness coordination during trial and immediately before trial."). The billing records in no way suggest that these tasks were duplicative of other attorneys' work. And the City, for its part, makes no effort to "point out what a particular entry might duplicate." *Soleau v. Ill. Dep't of Transp.*, 2011 WL 2415008, at *8 (N.D. Ill. June 9, 2011); *id.* at *7 ("IDOT marked the time entries it believes are duplicative with a 'D.' This approach is largely unhelpful because IDOT does not explain what each entry is duplicative of, leaving the court to—guess as to the basis for the objection."). *See also* Def.'s Resp. Br. at 5 ("Simply put, the number of duplicative hours supposedly worked by Mr. Spears fails to equal the number of hours reasonably expended."). Based on the Court's review of the billing records, it seems that (for the most part) Spears and Stevenson were the only attorneys working on the case as the trial approached[11] and the only two attorneys at counsel's table during trial.[12] True, Spears did not examine any witnesses or present before the jury, but there is nothing to suggest that his role at

---

[11]Gallegos also billed a total of 13.40 hours on trial prep-related matters in February and March 2015. The Court has reviewed Gallegos's entries during this time period and likewise finds that the time he spent on trial preparation, which mostly consisted of witness preparation, was reasonable. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart.

[12]Contrary to the City's contention, the fact that both Stevenson and Spears attended trial does not mean that they duplicated each other's efforts. It is not uncommon for a case with this many facts to reasonably require two attorneys per side (indeed, the City also had two attorneys assigned to the trial).

trial was that of a mere observer.[13] *See Clark v. Oakhill Condo. Ass'n, Inc.*, 2011 WL 1296719, at *9 (N.D. Ind. Mar. 31, 2011) (overruling the plaintiff's objection after observing that "[n]othing in th[e] record supports a finding that … [a second attorney's] presence at the injunction hearing was merely as an observer"). Given the complexity of the case—in light of the factual and legal issues involved and the breadth of the evidence, including the number of witnesses presented at trial—it would have been very difficult for Stevenson to have done the job alone. *Dupuy*, 648 F. Supp. 2d at 1020-21 (recognizing that "having a number of attorneys in court to handle a complicated civil rights matter … may be an appropriate expenditure of resources"). Spears's involvement leading up to and at the trial was not unreasonable.

That being said, there are a few entries that the Court takes issue with—namely, the 4.00 hours that Spears billed on March 2, 2015 to "[m]eet with client for trial preparation," and the 8.00 hours he billed two days later to the same. R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. As the City points out, these entries, which cover several hours of time, "leave[] the Court without any means of discerning what, if any, compensable *legal* work he contributed during those [12] hours." Def.'s Resp. Br. at 5 (emphasis in original); *see also Soleau*, 2011 WL 2415008, at *9 (concluding that attorney's entries, which stated, "[r]eview and work on trial preparation planning and related matters," was sufficient in part because "she did not block bill for the time[.] Instead, she billed for times ranging from 0.5 to 1.5

---

[13]Remember, the Court already excluded the time that Gallegos billed for merely attending the trial. *See supra* Section III.1.a.

hours"). So, the Court grants the City's objection as to those two entries, and as a result, strikes 12.00 hours of Spears's time from the fee request.

One final point: although it was reasonable for Spears to bill for the trial, there is no reason why Stragapede needed two attorneys, *plus* a paralegal *and* a research clerk there. This amounted to overstaffing. *See Smith*, 2015 WL 5675376, at *9 ("[T]hroughout the trial it was clear that the three attorneys at counsel table, plus the additional associate and law clerk sometimes in attendance, was overstaffing … ."). The billing records (along with the Court's memory of the trial) can account for the roles that Stevenson, Spears, and the paralegal played in the trial. The records do not, however, sufficiently identify what legal tasks the research clerk worked on while at trial on March 9 and 10, 2015. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. So, the Court will reduce the legal clerk's hours by 11.00 hours.[14]

## 2. Excessive Time

Next, the City objects to Stragapede's fee request on the grounds that "many entries seek[] clearly unreasonable, excessive time." Def.'s Resp. Br. at 6. For the most part, these objections concern time that Desiree Lauricella billed to internal conferences and time that Christine Frymire billed to attending the post-trial

---

[14]The research clerk's time entry for March 9, 2015 actually does identify some research the clerk conducted that day in addition to attending and assisting Stevenson at trial. But the research clerk block-billed 7.00 hours for all of her work that day, so the Court has no way of discerning how much time she actually spent at trial, as opposed to conducting research. What's more, the unredacted billing records evidence that the research done that day was straightforward and could not have come close to consuming 7.00 hours. So, the Court will disallow the entire 7.00 hours the research clerk billed that day.

settlement conference and damages hearing.[15] *Id.* at 6-7. Both Lauricella and Frymire were associates who worked on the case. *Id.*

### a. Desiree Lauricella

Lauricella was in charge of the nuts-and-bolts of discovery and drafted Stragapede's summary judgment briefs. The City emphasizes that "former associate Lauricella … billed for at least 32 'internal' conferences over 2 years (but only [once] … did Lauricella 'no-charge' an internal conference)." Def.'s Resp. Br. at 6.

---

[15]In its response brief, the City also objects to the 1.10 hours Gallegos billed on April 17, 2013 and the 1.70 hours he billed on May 7, 2013 to reviewing Lauricella's work as "unreasonable, excessive time." Def.'s Resp. Br. at 6; *see also* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. (The City did not, however, specifically object to these entries in its Local Rule 54.3(d) objections to Stragapede's fee petition.) Neither of these entries is excessive. It goes without saying that partners often review associates' work. Here, the time Gallegos spent reviewing Lauricella's work (2.80 hours total) is substantially less than the time Lauricella billed to generating that work, which is reasonable. *See Soleau*, 2011 WL 24215008, at *8 ("The time sheets demonstrate that generally, Proctor reviewed Denzin's work. Denzin's time sheet shows substantially more hours on a particular task, and Proctor's tend to be less than an hour."). These objections are overruled.

Likewise, the City also objects to the 6.50 hours that Stevenson billed on January 26, 2015 to "[c]omplete pretrial proposed order." *See* Def.'s Resp. Br. at 6; *see also* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The City's objection to this entry is frivolous. The work required to generate—or even just "complete"— that order, which entailed preparing an exhibit list, numerous motions in limine, voir dire, and proposed jury instructions, is immense. The City's objection here is overruled too.

And finally, the City objects to a handful of instances where Stragapede's counsel, billed in quarter-hour or twentieth-hour, as opposed to tenth-hour, increments. *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.; *see also* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The Court is not troubled by these entries. Quarter-hour billing is not per se unreasonable, *see Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986); *Garcia v. R.J.B. Props., Inc.*, 756 F. Supp. 2d 911, 918 (N.D. Ill. 2010), and here, there is only *one* instance where a *paralegal* on the case billed by the quarter-hour for a research assignment. *See Garcia*, 756 F. Supp. 2d at 918-19 (rejecting the defendant's objection to quarter-hour billing because "[n]otably, the time entries that Defendant identifies as potentially 'padded' by this practice account for a total of no more than four and a half hours."). The City's objections to the two instances where Christine Frymire, an associate on the case, billed in twentieth-hour increments are also unfounded—if anything, billing in twentieth-hour increments actually reduces the risk of an inflated fee request.

Courts may award fees for inter-office communications so long as the time spent communicating is "reasonably expended." *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008); *see also, e.g.*, *Bd. of Educ. of Chi. v. Walker*, 800 F. Supp. 2d 917, 925 (N.D. Ill. 2011). In fact, the Seventh Circuit has recognized that "[t]he practice of law often, indeed usually, involves significant periods of consultation among counsel." *Tchemkou,* 517 F.3d at 511. This is because "[t]alking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Id.* at 511-12. To ensure that the amount of time billed to internal communications was "reasonably expended," attorneys should "identify explicitly the subject matter of their discussions … ." *Id.* at 512.

After reviewing Lauricella's billing records, the Court finds that the amount of time she spent on the 32 or so internal conferences was reasonable. To start, 32 internal conferences over a period of two years that spanned both the discovery and summary judgment phases of the litigation is not overkill—that averages out to 1.33 internal conferences per month. *See Koziara v. BNSF Ry. Co.*, 2016 WL 4435299, at *2-3 (W.D. Wis. Aug. 19, 2016) (reducing the amount of time billed for internal conferences based on their frequency—the defendant's attorneys spent between 170 and 185 hours on "inter-office conferences"). That these conferences were generally brief—many were only 0.10 or 0.20 hours long—also suggests that the time Lauricella billed for these conferences was not excessive. More importantly, Lauricella's entries identify the particular legal task or stage of

litigation actually discussed during these conferences, such as document review and production, deposition prep, or summary judgment briefing.[16] In short, it is reasonable that Lauricella, the only associate on the case at the time, would have regularly discussed work assignments and her work product with Stevenson and Gallegos, the two main partners on the case.

There is one problematic entry, however. Specifically, the 0.40 hours that Lauricella billed on August 2, 2013 to "[m]eet with … Gallegos re: outcome of deposition of Judy Napoleon." R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. If "neither Gallegos nor Lauricella prepared for or even attended the Napoleon deposition," as the City contends, *see* Def.'s Resp. Br. at 6 (and the billing records do suggest that the City is right, *see* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart), then there is reason to question the purpose of this follow-up meeting. If Lauricella had explained in the entry *why* she and Gallegos met to discuss the Napoleon deposition—for example, maybe the discussion was necessary in order to adequately prepare for other witnesses' depositions—then perhaps the meeting would constitute "reasonably expended" time. But Lauricella did not do this, so those 0.40 hours will not count. Aside from that one entry, there is nothing to suggest that

---

[16]For example, on April 16, 2013, Lauricella billed 0.20 hours to "[c]orrespond with … Stevenson and … Gallegos re: my draft discovery answers and reviewing Defendant's produced documents." R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. One day later, she billed another 0.10 hours to "[c]orrespond with … Stevenson re: reviewing additional documents received from client." *Id.* Likewise, on May 10, 2013, Lauricella billed 0.20 hours to "[c]orrespond with … Gallegos and … Stevenson re: my completed review and summary of the arbitration transcript." *Id.* Lauricella's other entries follow this same format—each time she identifies who she corresponded with and what the topic of the correspondence was. *See id.*

Lauricella wasted time corresponding with other attorneys, so the Court will only reduce the hours she billed for internal conferences by 0.40 hours.

### b. Christine Frymire

Frymire started working as an associate on the case in May 2015. (Before that, Frymire worked as a law clerk on Stragapede's case.) The City contends that her "mere 'attendance'" at the settlement conference and damages hearing in spring 2015 "is clearly not compensable under the case law … ." Def.'s Resp. Br. at 7. Stragapede disagrees. He asserts that "it is not … unusual or improper to have a junior associate … attend [a] settlement conference[] or damages hearing[], both of which included attendance by [Stragapede]." R. 239, Pl.'s Reply Br. at 5.

As the Court has already pointed out, *see supra* Section III.1.c., whether it is reasonable to have more than one attorney at a court proceeding depends on the complexity of the case. *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 525 (7th Cir. 1995) (affirming trial court's assessment that "it was not unreasonable for more than one attorney to attend certain pretrial motions in a complex litigation which spanned over four years and entailed substantial discovery"). And while simply billing to "attend" a court proceeding may be cause for concern, surrounding entries can help provide necessary context. *See Berberena*, 753 F.2d at 634 ("The entries that the defendants single out, although vague when read in isolation, are not impermissibly vague when viewed in the context of the surrounding documentation."); *Soleau*, 2011 WL 2415008, at *8 ("Each entry should

be considered in context of the surrounding entries." (citing *Berberena*, 753 F.2d at 634)).

Based on the complexity of the case and the role that Frymire played in preparing for the settlement conference and damages hearing, it was reasonable that both she and Stevenson attended those proceedings. To start, after the jury trial, the Court "set[] th[e] case on two tracks at the same time: additional post-trial litigation and a settlement-conference referral." R. 131, 03/30/15 Minute Entry. The parties then had to prepare for both proceedings simultaneously. After the parties failed to reach a settlement by June 2, 2015, *see* R. 143, the Court held the evidentiary hearing on equitable damages just one week later, *see* R. 144. Stragapede testified at that hearing. *Id.* Not only was a lot going on during this time, but the proceedings were high-stakes and highly substantive. What's more, Frymire's billing record shows that she played a substantial role in researching damages-related issues and drafting the post-trial briefs in support of damages. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. Though Frymire may not have presented Stragapede's case at the post-trial proceedings, her familiarity with the issues warranted her presence. The City's objections are overruled.

### 3. Block Billing and Vague Entries

The City complains about "block-billing" and vague entries. *See* Def.'s Resp. Br. at 7-9. It asserts that many entries "mak[e] it impossible to determine whether the time spent [on a task] was reasonable and allowable." *Id.* at 7. Of the nearly 150 entries that the City objects to, it maintains that over half of those entries should be

struck for block-billing or vagueness. *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. In its response brief, the City further highlights ten or so block-billed entries that it contends are particularly troublesome. These entries include 28.20 hours Spears billed for attending the trial; 10.20 hours Lauricella billed over a two-day period in October 2013 for drafting Stragapede's Rule 56.1 statement of facts in support of his summary judgment motion; and 13.90 hours Stevenson billed over three days to "trial preparation," as well as 11.00 hours she billed on the final day of trial. *See* Def.'s Resp. Br. at 8-9; *see also* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The Court will address these particular objections—except for the hours Spears billed while at trial, which the Court has already ruled were reasonable, *see supra* Section III.1.c.—before analyzing whether any other entries the City objected to as block-billed or vague should be struck.

Courts refer to "the market—that is, the level of detail paying clients find satisfactory" when scrutinizing the level of detail in attorneys' time entries. *Delgado v. Mak*, 2009 WL 211862, at *4 (N.D. Ill. Jan. 29, 2009) (quotation marks and citation omitted); *accord In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("[T]he amount of itemization and detail required is a question for the market. If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."). Attorneys, at a minimum, "should identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12. Generally, this means "a description of 'the tasks performed,

the people involved, and a general statement of the topic of conversation or review.'" *Soleau*, 2011 WL 2415008, at \*8 (quoting *Clark*, 2011 WL 1296719, at \*8). Importantly, the Seventh Circuit has observed that "[a]lthough 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006).

Lauricella "block-billed" 3.30 hours to "[b]egin drafting Rule 56.1 Statement of Facts" on October 29, 2013 and another 6.90 hours the next day to "[c]ontinue drafting Rule 56.1 Statement of Facts." R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. To be sure, Lauricella could have broken this description down into sub-tasks—for example, the number of hours spent on particular events or issues—but there is no reason to doubt that the 10.20 hours she spent on that portion of Stragapede's summary judgment motion was reasonable. Though the City tries to minimize the amount of work that goes into generating a Rule 56.1 statement of facts, *see* Def.'s Resp. Br. at 8 ("Ms. Lauricella block billed over 10 hours to prepare a 63 item [Rule] 56.1 statement of facts. It is impossible to decipher … whether that amount of time is reasonable (but it appears at least 10 minutes were billed for each item, some of which were simple jurisdictional notes)."), the Court is well aware that Rule 56.1 statements, particularly 63-item ones, require a lot of effort to generate. Each paragraph in the statement must be tied back to a part of the discovery record, and often judgment must be used in crafting the paragraph so that it is helpful to the client yet precise enough that the opposing side must admit the

fact (or if the opposing side denies the paragraph, the denial is not persuasive). Because "the hours are not out of line here," *Delgado*, 2009 WL 211862, at *5 (quotation marks and citations omitted), the Court declines to reduce Stragapede's fees based on these time entries.

Stevenson's "block-billed" entries also pass muster. Beginning on February 12, 2015, Stevenson billed 13.90 hours to "trial preparation" over a three-day period. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The lack of detail in these entries is permissible because of the context and because Stevenson was the lead trial counsel. As the lead trial attorney for Stragapede, it is unsurprising that Stevenson worked long hours before the trial. What's more, the total time that Stevenson spent on trial prep, including pre-trial filings, between February and March 2013 is more than reasonable, further confirming that Stevenson did not waste time billing to frivolous, non-legal tasks. *See Duran*, 2012 WL 1279903, at *9 (refusing to make reductions for block-billed entries after observing that "th[e] five-month period right before trial is unlikely to have involved much wasted time (on either side). The court is therefore inclined to be much more tolerant of time entries for this period that are lacking in specificity.").

The same goes for the 11.00 hours Stevenson block-billed on March 13, 2015 (the final day of trial) to "[a]ttend trial; JoEllen Earl and closings; research and prepare for new damages." R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. *See Duran*, 2012 WL 1279903, at *9 (crediting attorney's time for "trial preparations; trial" after noting that "[w]e know what [the attorney] was doing because, in large

part, we saw him doing it. That he worked long hours before and after the close of each trial is no surprise; it is what a trial lawyer must to do [sic] to be successful, and we have no doubt that he did it."). And even if some of this time was actually spent waiting for a jury verdict, as the City contends (and notably Stragapede does not deny it), the Court still declines to discount any portion of this 11.00 hour block-billed entry. To be sure, there are a few courts in this District that have declined to award fees for time spent awaiting the jury's verdict. *See Gibson v. City of Chi.*, 873 F. Supp. 2d 975, 987, 991 (N.D. Ill. 2012) (discounting attorneys' time spent waiting for the verdict after observing that "[the plaintiff] makes no arguments in support of his request for recovery of fees for the time expended waiting for and speaking with the jurors after the verdict"); *LaSalvia*, 2012 WL 2502703, at *3 ("Not only does this description somewhat obfuscate the specific tasks that counsel performed over the 7.5 hour period, but counsel's time appears to include time awaiting the jury's verdict, which courts have held is not compensable."); *Warfield v. City of Chi.*, 733 F. Supp. 2d 950, 959-60 (N.D. Ill. 2010) ("The Court will also deduct 9 hours of time spent 'waiting for the verdict' from Thompson's billed hours as these hours were not 'reasonably expended.'"). In at least one of those cases, *Warfield v. City of Chicago*, counsel billed an entire day—time that easily could have been spent working on another case—solely to waiting for the verdict (in other words, no time was spent on presenting the case itself for that day). 733 F. Supp. 2d at 959-60. In contrast, here, the timing of closing arguments and the Court's instructions to the lawyers would have made it unreasonably difficult to work on other matters. Specifically, closing

arguments ended around 3:30 p.m. on March 13, 2015. In order to expedite the handling of any notes or questions from the jury, and because the end of the day was arriving relatively soon, the Court ordered the parties to stay in the courthouse and check-in at 4:30 p.m. *See* R. 176, 03/13/15 Trial Tr. at 1188:16-17 ("The Court: Please stay in the building and check back in at 4:30."). The Court gave the jury the option to deliberate past 4:30 p.m., which the jury did (they returned a verdict around 6:30 p.m.). It would have been nearly impossible for Stevenson to work on another case during this time (or even have the foresight to bring other work to do). So, even if Stevenson billed time to waiting for the jury's verdict, under these circumstances, the Court finds that these hours were reasonably billed.

The City objects to a plethora of other entries for improper block-billing and vagueness. The Court has reviewed these entries—both the descriptions contained therein and their context—and concludes that "the hours expended were reasonable and necessary to the conduct of the litigation." *Crispin R., Jr. v. Bd. of Educ. of Chi., Dist. 299*, 2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010). The City's claim that the entries are too sparse is therefore rejected.

### 4. Clerical Work

The City objects to numerous entries that reflect time spent on what the City labels "'clerical or secretarial tasks.'" Def.'s Resp. Br. at 9; *see also* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. The Seventh Circuit has held that courts "should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel 'on tasks

that are easily delegable to non-professional assistance.'" *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). "'[C]lerical' or secretarial tasks," like "organizing file folders, document preparation, and copying documents" are not even "'sufficiently complex to justify the efforts of a paralegal,'" much less an attorney. *Id.* (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996)). Instead, those tasks "should be absorbed as overhead into the attorneys' billing rate." *O'Brien v. Panino's, Inc.*, 2011 WL 3610076, at *2 (N.D. Ill. Aug. 16, 2011).

Most of the entries the City objects to as non-compensable clerical work actually reflect "sufficiently complex" tasks warranting either a paralegal's or an attorney's time. *Spegon*, 175 F.3d at 553. For example, the City objects to 6.50 hours Lamar (a paralegal) billed on April 27, 2015 to "review documents and assemble exhibits, scan, and redact; conference with … Stevenson regarding Exhibit 15 and 16, and prepare documents for bates labeling, e-correspondence to and from … Gallegos re: federal transcript needed for 2009 as part of the exhibits being produced[;] [e]-correspondence to … Stevenson re: same and status re: project." R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. These tasks—preparing and assembling exhibits and corresponding with attorneys on evidentiary-related issues—are within a paralegal's wheelhouse.

The City also objects to three of Gallegos's entries from October 2010[17] for time spent on drafting and finalizing a background memo about the case and two of his entries from October 2012[18] for time spent on finalizing revisions to the complaint and reviewing a law clerk's research memo.[19] R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. But all of these tasks require some degree of legal analysis, which means that they are all "appropriately labeled as attorney time." *Dupuy*, 648 F. Supp. 2d at 1024 (holding entries "such as 'proofing' briefs" were "appropriately labeled as attorney time"). The same is true for the "clerical/paralegal work" objections made to Frymire's,[20] Lauricella's,[21] and Spears's[22] entries. Those

[17]These entries are dated 10/19/10 (2.00 hours); 10/20/10 (2.00 hours); and 10/21/10 (1.30 hours). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

[18]These entries are dated 10/25/12 (2.50 hours) and 10/29/12 (1.70 hours). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

[19]Stragapede redacted the majority of this last entry (dated 10/29/12) for time Gallegos billed to reviewing a law clerk's research memo. *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. The Court addresses whether this entry contains excessive redactions later on in this opinion. *See infra* Section III.6.

[20]The City objected to Frymire's May 12, 2015 entry for 0.80 hours billed to proofing Stragapede's damages brief. (The City also objected to this entry as excessively redacted.) *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart; R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. As discussed below, *see infra* Section III.6, this entry should not have been redacted at all because it does not reveal any privileged attorney-client communication or confidential attorney work product. Thus, there is no need for this entry to remain confidential. The entry reads in its entirety: "Changed all applicable full cites to short cites, changed references to the plaintiff to 'Gino' or 'the Plaintiff' and accepted all changes to the brief." *See* R. 253 (sealed). Revising and proofing a legal document is compensable legal work, *see Dupuy*, 648 F. Supp. 2d at 1024 (holding entries "such as 'proofing' briefs" were "appropriately labeled as attorney time"), so the Court will award attorneys' fees for this entry.

[21]The City objected to a number of Lauricella's entries from April, May, and June 2013 that reflect work on discovery-related tasks, such as reviewing and summarizing discovery, preparing documents for production, updating the case timeline, and communicating with co-counsel about discovery-related issues. These entries are dated 04/18/13 (4.00 hours); 04/19/13 (4.10 hours); 05/09/13 (0.50 hours); 05/10/13 (1.50 hours); 05/15/13 (3.40 hours); 05/17/13 (1.70 hours); 05/28/13 (3.20 hours); and 05/29/13 (0.50 hours). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. The

entries—save for two exceptions[23]—evidence time billed for reviewing, summarizing, and preparing discovery, conducting legal research, drafting legal memoranda, corresponding with opposing counsel, and preparing evidence (including witness and exhibit prep) for trial. In other words, work that reasonably calls for a legal skill set. *See Smith*, 2015 WL 5675376, at *8 ("[S]ome trial exhibit organization on the part of the lead trial counsel is reasonable … ."); *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, 2014 WL 1094455, at *9 (N.D. Ind. Mar. 19, 2014) ("Most of the tasks Hartford identified are not clerical tasks. The attorneys reviewed the transcript of the proceedings to help prepare their motion. Attorneys, not staff, would research, revise motions, determine what evidence is necessary to support their motion, and prepare their deposition notice."); *id.* ("Although Hartford argues that summarizing deposition testimony would be clerical, this is not necessarily true if the attorneys were searching for specific things within the deposition to support their position."); *Newman v. Apfel*, 2000 WL

City also objected to entries from July and August 2013 where Lauricella billed time to conducting legal research and drafting a legal memo. These entries are dated 07/30/13 (1.70 hours); 08/01/13 (2.40 hours); and 08/02/13 (2.70 hours). *See id.* And finally, the City objected to Lauricella's December 5, 2013 entry for 0.30 hours billed for time corresponding with the City's counsel. *See id.* None of these entries reflect non-substantive, clerical work, so the Court overrules these objections as well.

[22]The City objected to a handful of Spears's February and March 2015 entries evidencing time billed for reviewing file materials and prepping Stragapede for testifying at trial; meeting with co-counsel to discuss trial exhibit issues; and researching and drafting a brief on the use of deposition testimony at trial. These entries are dated 02/26/15 (2.50 hours); 02/27/15 (2.80 hours); 03/02/15 (1.30 hours); and 03/05/15 (2.50 hours). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. Again, all of these entries reflect pre-trial work suited for an attorney, so the Court will not reduce any fees based on the City's objections here.

[23]Two of Lauricella's entries (dated 06/11/13 and 08/16/13) are problematic because they reflect clerical work. As discussed below, s*ee infra* Section III.4 at 27-28, the Court will reduce Stragapede's fees for time Lauricella billed to copying documents.

682663, at *3 (S.D. Ind. Apr. 20, 2000) ("Attorneys have responsibilities to the court and to their clients, and they are entitled to charge for their time reasonably spent on communications with the court and their clients.").

There are, however, a few entries lodged by Stevenson and Lauricella that evidence time billed for clerical-type work. On November 6, 2012, Stevenson billed 0.80 hours to "[p]repare waiver of service of summons documents." R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. Not only is 48 minutes a lengthy amount of time to prepare a waiver of a service of summons, but Stevenson should have delegated the task to someone else, like a paralegal or administrative assistant. *See Luttrell v. Accounts Recovery Bureau, Inc.*, 2012 WL 566396, at *3 & n.5 (S.D. Ind. Jan. 23, 2012) (disallowing attorneys' fees for time spent "preparing documents to send to [the defendant]" and "[time] entries for making filings"), *report and recommendation adopted*, 2012 WL 566628 (S.D. Ind. Feb. 17, 2012); *O'Brien*, 2011 WL 3610076, at *2 (rejecting request for fees where attorney charged for "even the most ministerial tasks … . For example, 'draft summons for defendant' and 'draft civil cover sheet' were billed at one-quarter hour each at $500 per hour"); *cf. Soleau*, 2011 WL 2415008, at *9 (disallowing request for attorneys' fees for time spent sending the notice of a motion to the defendant). The Court, therefore, will reduce Stevenson's fees (billed out at her 2012 rates) by 0.80 hours.

Similarly, two of Lauricella's entries evidence time billed for non-compensable clerical work. Lauricella billed 1.80 hours on June 11, 2013 to "[r]eview file and make copies of all documents signed by [] Bartus or … Biner (1.6);

correspond with … Stevenson re: same (.20)," and 0.80 hours on August 16, 2013 to "Copy Gino's paystubs and W-2s," and "correspond with … Gallegos re: same." *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. Because copying documents "[do]es not [even] justify the efforts of a paralegal," *Spegon*, 175 F.3d at 553, the Court will strike these entries and reduce Stragapede's fees accordingly.[24]

### 5. AFSCME Arbitration Fees and Costs

Before Stragapede filed the complaint in this case, his union filed a charge against the City for wrongful termination and the parties submitted the charge to arbitration. The City objects to "fees and costs related to [that] AFSCME [arbitration]." Def.'s Resp. Br. at 9-10. Specifically, the City takes issue with time that Gallegos billed to the arbitration in October and November 2010; time that Lauricella, Stevenson, and Spears billed to reviewing the arbitration transcripts; and the arbitration transcript costs. *Id.*

There really is a dividing line here between time billed to the arbitration *itself* and time billed to learning *about* the arbitration for purposes of this litigation. Although the latter is compensable, the former is not. The Court starts with the latter: the time that Lauricella[25] and Stevenson[26] billed to reviewing the arbitration

---

[24]Had Lauricella separated out the time she billed on June 11, 2013 to reviewing the case file and making copies, as opposed to block billing for that time, the Court could have just reduced the fee award by the amount of time she billed to copying documents. But Lauricella did not do this, so the Court strikes the entire entry.

[25]These entries are dated 05/03/13 (0.10 hours); 05/10/13 (1.80 hours); and 05/10/13 (0.20 hours). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

transcripts in 2013, and the hour that Spears[27] billed to the same before trial was not only reasonable, but necessary. Indeed, it would have been foolhardy *not* to review those transcripts. The transcripts not only provided background information on Stragapede's firing, but also contained recorded party-admissions that either side could (and in fact did) use for impeachment purposes at trial. *Cf. Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 1999 WL 669226, at *4 (N.D. Ill. Aug. 27, 1999) (observing that "it is a necessary task to review the deposition transcripts"), *aff'd*, 223 F.3d 585 (7th Cir. 2000). Because the City is on the hook for the time Stragapede's attorneys spent reviewing the arbitration transcripts, it follows that the City is also on the hook for the $2,626.50 Stragapede spent to obtain those transcripts.[28] *See Majeske v. City of Chi.*, 218 F.3d 816, 825 (7th Cir. 2000) (observing that courts may tax the costs of "transcripts from other court proceedings necessarily obtained for use in the case").

On the other hand, Stragapede may not recoup fees for Gallegos's work on the AFSCME arbitration itself. On October 29, 2010, Gallegos billed 1.10 hours to "[c]onference call … re: grievance hearing issues (.5); review collective bargaining

---

[27]These entries are dated 01/08/13 (0.60 hours); 02/11/13 (1.80 hours); 02/12/13 (0.80 hours); 02/15/13 (2.50 hours); 02/22/13 (2.40 hours); 03/21/13 (1.30 hours); and 10/24/13 (1.30 hours). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

[27]This entry is dated 03/06/15 (1.00 hour). *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

[28]This is particularly so given that the City obtained its own copy of the AFSCME transcripts for this case. *See* R. 225-3. The City maintains that "[its] decision to obtain [the arbitration transcripts] w[as] related to other matters between the City and AFSCME which have absolutely nothing to do with the proceedings herein." Def.'s Resp. Br. at 10. But the City's own bill of costs for expenses incurred in *this* litigation includes the invoiced bills for those transcripts. *See* R. 225-3.

agreement re: grievance hearing procedures (.6)." *See* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. Likewise, on November 11, 2010, Gallegos billed another 0.50 hours to "[t]elephone conference … re: results of grievance hearing and next steps."[29] *Id.* These entries reflect work that directly relates to Stragapede's arbitration proceeding, not to this case. Though participating in that proceeding may have been useful, there is nothing to suggest that it was reasonably necessary for *this* litigation. *Cf. Dupuy*, 648 F. Supp. 2d at 1025-26 (observing that Plaintiffs' counsel's participation in state administrative proceedings "was undoubtedly useful," but reasoning that "[t]he necessity of that work is another matter" because "the time the attorneys spent in those proceedings was not 'of a type ordinarily necessary' to prevail in [a § 1983 action] in this court" (citation omitted)). Therefore, the Court will reduce Gallegos's hours by 1.60 hours.

### 6. Excessive Redaction

In support of his fee petition, Stragapede submitted a redacted version of his counsels' billing records for attorney-client and work product protection purposes. *See* Pl.'s Am. Fee Pet. at 3, 6-7; R. 225-1, Stevenson Aff. at Exh. B, Fees Chart; *see also* N.D. Ill. Local Rule 54.3(d)(5)(A). The City, in turn, objected to most of the redacted entries on the grounds that they contained excessive redactions. *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet. In response to these objections, the Court directed Stragapede to file an unredacted

---

[29]There is one more entry (dated 11/05/10) where Gallegos claims another 0.50 hours' worth of fees for work done on the arbitration. R. 225-1, Stevenson Aff. at Exh. B, Fees Chart. Because this entry is almost entirely redacted, the Court will address it (and ultimately omit it from the fee award calculation) in the next section. *See infra* Section III.6.

version of the billing records *ex parte* and under seal, *see* 09/14/16 Minute Entry, which he did, *see* R. 252 (sealed).

The Court has reviewed the unredacted billing records, in particular the entries that the City labeled as "excessive[ly] redact[ed]." The City is right: a number of the objected-to entries do not contain any privileged attorney-client communications or confidential attorney work product; indeed, many entries describe expected research topics for ADA cases without disclosing any particular attorney opinions or impressions. Because Stragapede should not have redacted these particular entries in the first place, the Court reproduces them in full here:

Research Clerk:

— 10/24/12: Research Clerks MWW: Research for [Gallegos] on ADA and FMLA reasonable accommodations and interactive process requirements. (4.75 hours.)

— 10/17/13: ECM continued research and revised and completed draft of memo containing findings regarding ADA, specifically mitigation of damages, essential functions of the job, and continuing duty of plaintiff. Outline case law that was on point regarding facts and analysis. (3.50 hours.)

— 03/09/15: CRF: Attended and assisted Tracy Stevenson at the St[r]agapede v. City of Evanston trial and conducted research of intersections locations of CVS and Dominick's Stores in Evanston. (7.00 hours.)[30]

Gallegos:

— 11/05/10: Meeting with Gino and Geanine re: grievance hearing and return to work issues. (0.50 hours.)[31]

---

[30]The Court has already determined that Stragapede is not entitled to fees for this entry. *See supra* Section III.1.c.

[31]The City did not specifically object to this entry, but lodged a general objection to all of Gallegos's entries, including this one. *See* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.

— 06/28/11: Exchange emails with Tracy E. Stevenson re: summary of client's meeting with union counsel. (0.30 hours.)

Frymire:

— 05/08/15: Researched case law on damages awards that include overtime. (0.60 hours.)

— 05/12/15: Met with Tracy Stevenson and Andrew Gallegos to go over brief, and damages computation. (0.50 hours.[32])

— 05/12/15: Changed all applicable full cites to short cites, changed references to the plaintiff to "Gino" or "the Plaintiff" and accepted all changes to the brief. (0.80 hours.[33])

Lauricella:

— 04/22/13: Create timeline of relevant events surrounding Gino's injury, placement on administrative leave, and termination; correspond with Tracy Stevenson and Andrew Gallegos re: same. (1.70 hours.)

— 04/26/13: Meet with Geanine Stragapede re: her questions about certain documents referenced in the arbitration transcript and compelling production of same. (0.80 hours.)

— 05/03/13: Correspond with Andrew Gallegos re: his meeting with Geanine Stragapede. (0.10 hours.)

— 05/08/13: Correspond with Andres Gallegos re: meeting with Geanine Stragapede to discuss the status of discovery. (0.20 hours.)

— 05/09/13: Review Geanine Stragapede's notes on the arbitration transcripts in preparation for today's meeting with her. (0.50 hours.)

— 05/09/13: Meet with Geanine Stragapede to discuss her questions about the arbitration transcript and status of the case. (1.00 hours.)

— 05/10/13: Update timeline of relevant events to include certain events discussed in the AFSCME v. City of Evanston arbitration transcript. (1.50 hours.)

---

[32]The unredacted billing records show that Frymire billed 0.56 hours to this task. *See* R. 253 at 95 (sealed).

[33]The unredacted billing records show that Frymire billed 0.81 hours to this task. *See* R. 253 at 95 (sealed).

— 05/28/13: Meet with Geanine Stragapede and Tracy Stevenson to discuss finalizing discovery responses. (0.50 hours.)

— 06/19/13: Continue drafting memo summarizing same in preparation for Motion to Compel documents listed in the City's Privilege Log. (1.90 hours.)

— 06/21/13: Correspond with Tracy Stevenson re: strategy for Gino and Geanine's depositions given Vicki Biner's deposition testimony, next steps in case. (0.50 hours.)

— 07/01/13: Meet with Geanine Stragapede and Andres Gallegos to review Gino's social security documents, review documents, and correspond with Tracy Stevenson re: same. (0.50 hours.)

— 07/08/13: Meet with Geanine Stragapede to discuss the outcome of last week's deposition of Tim Bartus and current strategy re: the case. (0.60 hours.)

— 09/10/13: Meet with Geanine Stragapede, Andres Gallegos, and Tracy Stevenson re: Gino's additional documents for production and current status of the case. (0.70 hours.)

— 10/16/13: Meet with Tracy Stevenson to discuss reviewing supplemental documents received from Defendant and strategy for Gino's motion for summary judgment. (0.40 hours.)[34]

Stevenson:

— 05/23/13: Conference re: discovery (.20); conference with client re: production (.60).[35] (0.80 hours.)

These entries should not have been redacted because they do not contain any privileged attorney-client communications or confidential attorney work product.

---

[34]The City also objects to Lauricella's October 21, 2013 entry on "excessive redaction" grounds, *see* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.; but that entry is not redacted, *see* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart, so there is no basis for the objection.

[35]The City identified this entry as a task completed by Lauricella, *see* R. 225-2 at Exh. 1, Def.'s Local Rule 54.3(d) Objections to Pl.'s Am. Fee Pet.; the billing records, however, show that Stevenson actually completed and billed for this task, *see* R. 225-1, Stevenson Aff. at Exh. B, Fees Chart.

That is, the entries reflecting discussions with Stragapede "note the general topics of [counsels' discussions with him], … [and] do not convey in any way the substance of confidential communications … ." *Wieboldt Stores, Inc., By & Through Raleigh v. Schottenstein*, 1990 WL 104193, at *2 (N.D. Ill. July 2, 1990). And the entries that discuss attorneys' work product do not reveal "the mental impressions, conclusions, opinions, or legal theories [of Stragepede's attorneys] concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B).[36]

But the fact the entries should not have been redacted does not prevent Stragapede from receiving fees for this work. (It just means that the entries should not have been redacted.) Even so, the Court finds that two of the entries listed above must be struck[37]:

Gallegos:

— 11/05/10: Meeting with Gino and Geanine re: grievance hearing and return to work issues. (0.50 hours.)

Stragapede is not entitled to fees for this entry because the post-grievance hearing meeting should have been billed to that proceeding, and not to this case. Gallegos's fee is reduced by 0.50 hours.

---

[36]Federal Rule of Civil Procedure 26(b)(3) contemplates that billing records qualify as documents prepared in anticipation of trial: "to the extent Plaintiff will eventually seek an attorney's fee award, a contemporaneously created record of time spent on the case will be necessary to obtain that remedy … ." *Johnson v. Bridges of Ind., Inc.*, 2011 WL 977561, at *2 (S.D. Ind. Mar. 17, 2011); *see also* Fed. R. Civ. P. 26(b)(3).

[37]If the City has additional objections to these now-unredacted entries, then it may file a motion for reconsideration. Though Local Rule 54.3(d) requires a respondent to state their objections to the fee petition with specificity in the Joint Statement, the Court will not hold the City to this standard should it choose to object to any of these previously-redacted entries.

<u>Lauricella:</u>

— 05/03/13: Correspond with Andrew Gallegos re: his meeting with Geanine Stragapede. (0.10 hours.)

The billing records do not actually show that Gallegos billed for (or even had) a meeting with Geanine Stragapede in the days leading up to this entry. If Gallegos did not bill for the alleged meeting, there is no reason why Lauricella should get credit for her discussion with Gallegos. The Court will reduce Lauricella's fees by 0.10 hours.

There is one more redaction issue to address: the Court discovered a few entries listed on the redacted billing records, but not listed on the unredacted billing records. (Quite obviously, the City could not have discovered these discrepancies given that Stragapede filed the unredacted billing record under seal and *ex parte*, as directed by the Court.) These entries include:

<u>Research Clerk:</u>

— 10/25/12: Research Clerks MWW: Research and memo for AJG on [redacted text]. (1.70 hours.)

— 10/28/13: Review and revise summary of deposition of Judith Napoleon. (0.30 hours.)[38]

— 10/28/13: CRF: Researched the effects (3.1) [redacted text] and finalized memo (N/C). (3.10 hours.)

<u>Spears:</u>

— 03/12/15: Research jury verdict/settlement figures for emotional distress/pain and suffering in ADA/employment litigation.[39] (0.70 hours.)

---

[38]This entry did not contain any redactions. The Court still declines to award fees for this work because the entry did not appear on the unredacted billing records.

[39]This entry did not contain any redactions. The problem, however, is that the redacted billing records show that Spears completed this work, while the unredacted billing

Because Stragapede's unredacted billing records offer no evidence that this work was ever actually done, he will not receive fees for these entries. The fee award will be reduced by 5.10 hours for the time that the Research Clerk billed to the case and 0.70 hours for the time that Spears billed to the case.

### 7. Prejudgment Interest on Fee Award

In his motion for fees, Stragapede also requested interest on the fee award "to account for the passage of time based upon the prime rate." Pl.'s Am. Fee Pet. at 14. He asserts that the Court should use "the prime rate [(compounded annually)], which is the rate banks generally charge to their most creditworthy customers … ." *Id.* at 15.

The Court declines to award prejudgment interest on the fee award. Local Rule 54.3 requires that the joint statement list "the *total* amount of fees … claimed by the moving party," and include "a brief description of each *specific dispute*." N.D. Ill. Local Rule 54.3(e) (emphases added). And, "[u]nless otherwise allowed by the court, the motion [for fees] and any supporting or opposing memoranda shall *limit their argument … to disputed issues*." N.D. Ill. Local Rule 54.3(f) (emphasis added). Had Stragapede requested prejudgment interest in the parties' Joint Statement, then the Court would have at least considered the issue. But Stragapede did not do this, *see* R. 225-1, Joint Statement, which means that his request is untimely. *Cf. Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016) (upholding

---

record shows that "CAC" completed this work. This inconsistency—and more importantly, the inability to tell which attorney actually "[r]esearched jury verdict/settlement figures"— prevent Stragapede from receiving fees for this work.

district court's refusal to award the plaintiff prejudgment interest on her attorney's fee award after determining that the request was untimely). Stragapede is not entitled to prejudgment interest on his fee award.

## IV. Conclusion

For the reasons stated above, Stragapede's motion for fees, R. 225, is granted in part and denied in part. The Court awards Stragapede $345,355.40 in attorneys' fees (in accordance with the fee chart below) and $10,114.27 in costs.

| Attorney: | Rate: | Hours Billed: | Total: |
|---|---|---|---|
| Stevenson: | 2010-2013: $320 | 169.37 | $ 54,198.40 |
| | 2014: $340 | 76.50 | $ 26,210.00 |
| | 2015: $350 | 448.30 | $156,905.00 |
| Gallegos: | $185 | 132.40 | $ 24,494.00 |
| Sender: | $350 | ~~14.30~~ | $0 |
| Spears: | $275 | 46.30 | $ 12,732.50 |
| Lauricella: | $225 | 137.90 | $ 31,027.50 |
| Frymire: | $200 | 77.70 | $ 15,540.00 |
| Paralegal (Lamar): | $160 | 98.60 | $ 15,776.00 |
| Research Clerk: | $120 | 70.60 | $   8,472.00 |
| | | Total Hours: | Total Fee Award: |
| | | 1257.67 | $345,355.40 |

ENTERED:


     s/Edmond E. Chang     
Honorable Edmond E. Chang
United States District Judge


DATE: October 19, 2016